# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES T. ATCHLEY, DUANE BELDEN, RAYMOND BOTTING, LAWRENCE BRAGG, EDWARD DOOLITTLE JR., ALBERT DORKO, DANIEL DUGGAN, STEVEN ENGEL, ROBERT FEE, DEBORAH FIELDS, HOWARD L. GARNAAT, CAROLL GIVANS, NORMAN GRIMMER, JACK HAMMOCK, JOAN HENDERSON, NORMAN E. HOKE, JACK HOLT, PAUL KALLEWAARD, DUANE A. KNIGHT, ROBERT KRUSYNA, THOMAS LATTERNER, ANNIE LEMMER, JOHN C. LEVERSEE, MICHAEL MANSFIELD, PAUL MERRICK, LAWRENCE E. MIDDLESTADT, DANIEL D. MILLER, ROBERT W. NICHOLSON, II, ELVIS O'HARA, EDGAR V. OLSON, MELVIN PAYNE, MILTON F. PETER, JERAMY ROBERTSON, JEFFREY RUSSELL, JAMES SAVAGE, DAVID L. SHULTZ, DERIC SLIGER, MARY STAFFORD, RICHARD TEMPLE, WILLIAM THURMAN, SHIRLEY TIRONI, CINDY VALORE, KENNETH VANDERROEST, DOUGLAS WAGGONER, JACK D. WALBURN, LARRY WARNER, RICHARD WILLARD, JR., DOUGLAS R. WRIGHT, JAMES YONKMAN, AND JUAN A. ZUNIGA,

UNPUBLISHED
February 12, 2015

Claimants-Appellants,

v

CHECKER MOTORS CORPORATION and LICENSING & REGULATORY AFFAIRS DEPARTMENT, UNEMPLOYMENT INSURANCE AGENCY,

No. 318816
Kalamazoo Circuit Court
LC No. 2011-000442-AE

Appellees.

Before: O'CONNELL, P.J., and SAWYER and MARKEY, JJ.

-1-

PER CURIAM.

The captioned claimants for unemployment compensation, former employees of Checker Motors Corporation (Checker), appeal by leave granted the circuit court's order of October 11, 2013, affirming the April 8, 2013 decision of the Michigan Compensation Appellate Commission (MCAC), which affirmed but modified the June 29, 2010 decision of an administrative law judge (ALJ) that applied the period designated by Checker in a September 18, 2009 to certain severance payments Checker made pursuant to an August 28, 2009 agreement with claimants' union. The ALJ applied the allocation period Checker designated, MCL 421.48(2), which commenced September 1, 2009 and ran various weeks depending on each claimant's length of service. The ALJ affirmed the agency's determination that because of the severance payments, claimants were not entitled to full unemployment benefits during the designated periods due to offsets required by MCL 421.27(c), and also that claimants would be required to repay benefits improperly paid, MCL 421.62. In its April 8, 2013 decision, the MCAC modified the ALJ's decision by ruling that the severance payments could not legally be made until August 28, 2009 agreement was approved the bankruptcy court on September 21, 2009. Consequently, benefits paid to claimants before that date were not subject to restitution under MCL 421.62. The circuit court affirmed. Finding no error warranting reversal, we affirm.

I. SUMMARY OF PERTINENT FACTS AND PROCEEDINGS

The basic facts are not disputed. Checker filed for Chapter 11 bankruptcy in January 2009 but continued to operate its business as debtor-in-possession.[1] Claimants were laid off when Checker closed its Kalamazoo plant in June 2009. Claimants filed for unemployment compensation and began receiving benefits that June. At the time the plant closed, Checker was subject to a collective bargaining agreement with the United Steelworkers (USW), covering 125 bargaining unit employees, including claimants. Checker entered an agreement on August 28, 2009, with the USW for termination of the collective bargaining agreement (CBA) and modification of retiree benefits. The agreement resolved a dispute between the parties regarding whether Checker owed or could make severance payments specified in the CBA. The agreement also resolved the claims of terminated employees and union retirees for health insurance benefits. The agreement provided it was subject to and would become effective on the approval of the bankruptcy court. On Checker's motion, the bankruptcy court issued its order on September 21, 2009, approving and incorporating the agreement.

The agreement provided for severance for terminated employees as follows:

The Debtor [Checker] will make a lump sum severance payment to the Terminated Employees in accordance with the following schedule, *covering the period commencing on September 1, 2009*:

_____

[1] Subject to statutory limitations and those the bankruptcy court imposes, a debtor-in-possession has all the powers and duties of a trustee, 11 USC 1107(a), and unless otherwise ordered by the court after notice and hearing may continue to operate the debtor's business, 11 USC 1108.

a. 5 years of service – 48 hours of pay

b. 5 years but less than 10 – 96 hours of pay

c. 10 years but less than 15 – 144 hours of pay

d 15 years but less than 20 – 192 hours of pay

e. 20 years but less than 25 – 240 hours of pay

f. 25 years or more – 288 hours of pay

Severance pay shall be calculated based upon the hourly rate of $16.18 (which represents the plant average hourly rate at the time of shutdown). Debtor *shall mail severance checks* directly to the Terminated Employees, directed to the last known addresses for the Terminated Employees, *within five (5) business days of entry of an Order approving this Agreement. . . .* [Termination Agreement, 8/29/2009, ¶ 5 (emphasis added).]

In a letter dated September 18, 2009, Checker mailed the severance checks to the terminated employees in accordance with the terms of the August 28, 2009 agreement. The letter noted that the severance checks were 60% of the amount provided for in the CBA and set forth the method of calculating the amount as provided in the agreement. The letter then stated:

The agreement also provided that these severance payments cover the period commencing on September 1, 2009. The Company is allocating these payments over the following time periods, depending on the number of hours of pay involved:

| | |
|---|---|
| 48 hours pay | From September 1 through September 8, 2009 |
| 96 hours pay | From September 1 through September 16, 2009 |
| 144 hours pay | From September 1 through September 24, 2009 |
| 192 hours pay | From September 1 through October 2, 2009 |
| 240 hours pay | From September 1 through October 12, 2009 |
| 288 hours pay | From September 1 through October 20, 2009 |

The impact of this allocation is that for each week or partial week over which these severance payments are allocated, the Unemployment Insurance Agency (UIA) may reduce your unemployment benefits for that week. The final determination as to whether your unemployment benefits will be affected will be made by the UIA. [Checker's letter dated September 18, 2009.]

On September 28, 2009, an attorney for the USW sent a letter to the Unemployment Insurance Agency (UIA or the agency) asserting that Checker "does not have the right to allocate

the severance pay." The USW took the position that the lump sum severance payment could be allocated only to the week the terminated employees received it.

After conducting an inquiry, MCL 421.32a, the agency issued a redetermination regarding claimants' eligibility for benefits under MCL 421.27(c). Under § 27(c), an "eligible individual shall be paid a weekly benefit rate with respect to the week for which the individual earns or receives no remuneration," but the benefit is reduced by a percentage of remuneration received. The agency redetermination was based on the severance pay the claimants received, Checker's allocation, and MCL 421.48(2), which provides in pertinent part:

> All amounts paid to a claimant by an employing unit or former employing unit for a vacation or a holiday, and amounts paid in the form of . . . severance payments, salary continuation, or other remuneration intended by the employing unit as continuing wages or other monetary consideration as the result of the separation, . . . shall be considered remuneration in determining whether an individual is unemployed under this section and also in determining his or her benefit payments under section 27(c), *for the period designated by the contract or agreement providing for the payment*, or *if there is no contractual specification of the period to which payments shall be allocated, then for the period designated by the employing unit or former employing unit*. [Emphasis added.]

Claimants sought review of this determination, and the matter was assigned to an ALJ for a hearing. See MCL 421.33. The ALJ issued its decision affirming the agency redetermination on June 29, 2010. The ALJ started with the premise that claimants bear the burden of proof as to eligibility for benefits. See *Dwyer v Unemployment Compensation Comm*, 321 Mich 178, 187; 32 NW2d 434 (1948); MCL 421.28. Citing MCL 421.48(2), the ALJ noted that while remuneration may be allocated by contract, it also may be designated by the employing unit or former employing unit "if there is no contractual specification of the period to which payments shall be allocated[.]" *Id*. The method of designating the period, the ALJ continued, is not defined by the statute. Thus, based on the facts and the law, the ALJ ruled that Checker "was entitled to allocate the severance payments as it did." Consequently, The ALJ affirmed the agency's determination and ordered:

> The claimants are ineligible for receipt of benefits under the provisions of Sections 27(c) and 48 for the periods covered by the individual allocations.

> Pursuant to Section 62(a), the Unemployment Agency is directed to issue additional adjudications, if necessary, relative to repayment of benefits.

Claimants appealed to the Employment Security Board of Review. A majority panel of that board issued its decision on July 29, 2011, ruling that the ALJ's decision was "in conformity with the law and facts and should be affirmed." Board of review member Gary Goolsby would have modified the ALJ's decision to grant benefits for the first two weeks of September 2009. Member Goolsby reasoned that the "[c]laimants received their severance checks subsequent to the [September 21, 2009] Order of the bankruptcy judge. Those payments could not be legally paid, and, accordingly, were not due until the bankruptcy judge issued the Order." Thus,

member Goolsby would have ruled that "the benefits the claimants received before the date of the bankruptcy judge's Order were properly paid and <u>not</u> subject to Section 62 of the MES Act."

After the board of review's decision, most claimants appealed to the circuit court. See MCL 421.38. Claimant Robert Krusyna, however, on August 25, 2011, filed a request for rehearing with the newly created MCAC. The MCAC succeeded the board of review on August 1, 2011, the effective date of Executive Reorganization Order No. 2011-6, MCL 445.2032. See also MCL 421.34(1). Of the original board of review members that issued the July 29, 2011 decision, only Gary Goolsby was reappointed by the Governor to the MCAC. Goolsby was on the MCAC panel that reheard Krusyna's case, which issued its decision on October 11, 2011, adopting Goolsby's dissenting reasoning from the board of review decision of July 29, 2011. Thereafter, the circuit court with respect to the appeals pending in that court, issued an order of remand on April 12, 2012 to "(1) to address consolidating the appeals of all claimants arising out of the Checker Motors Corporation matter relating to receipt of severance pay and (2) to explain the inconsistency of opinions in the decision-making process."

In its April 8, 2013, decision on remand, the MCAC explained that the inconsistent opinions resulted from the change in composition of its membership. The panel, which also included commissioner Goolsby, affirmed the ALJ's original June 29, 2010 decision but modified it. The MCAC reasoned that "legally the severance payments could not be made until the bankruptcy judge issued the order" of September 21, 2009. The bankruptcy order, the panel further reasoned, required "severance checks to be mailed within 5 days of the order." "Thus, the claimants received their severance checks subsequent to the judge's order. The payments could not be legally made until the judge issued the order." After noting the allocations of severance pay in Checker's September 18, 2009 letter, the MCAC ruled:

> Therefore, we modify the ALJ's decision accordingly, and specifically note that the benefits the claimants received before the date of the bankruptcy judge's order were properly paid and not subject to Section 62 of the MES Act.

> Unemployment benefits were properly paid to the clamant under Sections 27(c) and 48 of the MES Act for the period of September 1, 2009 through September 20, 2009 and are not subject to restitution under Section 62(a) of the MES Act.

> The claimant [2] is ineligible for benefits beginning September 21, 2009 through the period of allocation.

Claimants appealed to circuit court and argued that the MCAC had erred when it ignored the fact that § 48(2) used both the singular "payment" and the plural "payments," and sought to distinguish "for the period designated by the contract or agreement providing for the payment" from "if there is no contractual specification of the period to which payments shall be allocated." Claimants argued that § 48(2) does not allow for allocation of a single lump sum payment where the period is designated by contract. It only allows for allocation of "payments" when the period

---

[2] The same decision and order was entered in each of the individual claimant's cases.

to which the payments are allocated is not specified in a contract. Claimants further argued that because under the August 29, 2009, termination agreement each claimant would receive a single "lump sum severance payment" to be paid within five days of the bankruptcy court's approval of the agreement, there was "a period designated by the contract or agreement providing for the payment;" thus, the language addressed to "payments" would not apply, and no allocation over a period of weeks was permitted. The agency argued, as it had before the MCAC, that the phrase "lump sum" explained how the severance was to be paid, not how it was to be allocated; consequently, the agency had to apply the periods that Checker designated pursuant to § 48(2).[3] The circuit court issued its order affirming the MCAC's decision on October 11, 2013:

> The Court finds that the phrase "payments" is not at issue in the appeal, but what is at issue is the allocation period. The Court disagrees with Claimants that the Commission erred in ignoring the singular/plural terminology of "payment"/"payments" in Section 48(2). The Court finds instead that the Commission relied on Section 48(2) to determine the allocation period.

> The Court will note, that while a thorough reasoning was not provided by the Commission on how they reached the result that they did, the decision is supported by competent, material and substantial evidence based on the record as a whole.

This Court granted claimants' application for leave to appeal "limited to the issues raised in the application and supporting brief." See MCR 7.205(E)(4). Although we disagree with the MCAC that the timing of the mailing or receipt of the severance payments affected their legality or the application of § 48(2), we note that there is no appeal regarding that part of the MCAC's decision before the Court. We otherwise discern no error warranting reversal and therefore affirm.

## II. STANDARD OF REVIEW

Administrative decisions are subject to review "as provided by law." Const 1963, art 6, § 28. In this case, MCL 421.38(1) provides that a circuit court "may review questions of fact and law on the record made before" an ALJ or the MCAC, "but the court may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record." Deference must be accorded an agency's findings of fact, especially when made on the basis of credibility determinations or conflicting evidence. *Dep't of Community Health v Anderson*, 299 Mich App 591, 598; 830 NW2d 814 (2013). Further, "'the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.'" *In re Complaint of Rovas Against SBC Michigan*, 482 Mich

---

[3] "The unemployment agency is a party to any judicial action involving an order or decision of the Michigan compensation appellate commission or an administrative law judge." MCL 421.38(3). See also MCL 421.34(3) ("The agency is an interested party in a matter before an administrative law judge, the Michigan compensation appellate commission, or a court . . . .").

90, 98, 103; 754 NW2d 259 (2008) (citation omitted); see also *United Parcel Service, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 202-203; 745 NW2d 125 (2007).

"This Court's review of a circuit court's review of an administrative decision is 'to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review.'" *Mericka v Dep't of Community Health*, 283 Mich App 29, 35-36; 770 NW2d 24 (2009), quoting *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585, 701 NW2d 214 (2005). Our review of the circuit court's decision is to determine if the court properly applied the above stated principles: "we must determine whether the [circuit] court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's findings." *Polania v State Employee's Retirement Sys*, 299 Mich App 322, 328; 830 NW2d 773 (2013).

In this case, the outcome is controlled by statutory interpretation and by the interpretation of a contract, which present issues of law reviewed de novo. *Mericka*, 283 Mich App at 36; *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008)

III. ANALYSIS

The plain terms of Michigan's Employment Security Act, MCL 421.1 *et seq.*, require that eligibility for unemployment benefits depends on an individual's being unemployed. MCL 421.28(1) ("An unemployed individual is eligible to receive benefits with respect to any week only if the unemployment agency finds all of the following . . . ."). The act, at the time pertinent to this case, further provided that "[a]n individual shall be considered unemployed for *any week* during which he or she performs no services and for which remuneration is not payable to the individual, or for any week of less than full-time work if the remuneration payable to the individual is less than his or her weekly benefit rate." MCL 421.48(1) (as amended by 2002 PA 192). Under § 27(c), an "eligible individual shall be paid a weekly benefit rate with respect to the week for which the individual earns or receives no remuneration." MCL 421.27(c). "Remuneration" is defined to include "all compensation paid for personal services, including commissions and bonuses, and . . . services, the cash value of all compensation payable in a medium other than cash." MCL 421.44(1). This statutory scheme evidences that eligibility for unemployment benefits depends on an individual's being unemployed and not earning or receiving any remuneration as defined by the act during a particular timeframe—a week.[4]

We note there is no dispute in this case that claimants received severance checks pursuant to the termination agreement and that this severance pay is remuneration within the meaning of the act. MCL 421.48(2). We also note that claimants do not contest the MCAC finding that

---

[4] The act defines "week" as "calendar week, ending at midnight Saturday, but all work performed and wages earned during a working shift which starts before midnight Saturday shall be included in the week in which that shift begins." MCL 421.50. Notwithstanding this definition, seven consecutive days within a period of two weeks during which no remuneration is earned or received may qualify as a "week" for consideration of benefits. MCL 421.27(c)(1).

claimants received the severance payments at issue "subsequent to the [bankruptcy] judge's order" of September 21, 2009, which approved the termination agreement between Checker and the USW. As an aside, we disagree with the MCAC's legal conclusion that the severance payments, if made before the order of the bankruptcy court approving the termination agreement, would not have been legal. The MCAC cites no authority for this proposition, and we discern none. Checker, as debtor- in- possession, was lawfully acting as a bankruptcy trustee operating and then winding down its business. While another creditor might have sought to avoid the severance payments as a preference if the court had not approved the agreement, the claimants, who were represented by their union in reaching the termination agreement with Checker, have no basis to assert the severance payments were illegal or improper. Claimants might assert a violation of the termination agreement, but by its plain terms the agreement did not provide a time for making the payment. It only required that the severance checks be mailed "within five (5) business days of entry of an Order approving this Agreement." There is no record evidence as to when the checks were actually mailed; the letter of transmittal is dated Friday, September 18, 2009, and the order approving the termination agreement was entered on Monday, September 21, 2009. Even assuming the severance checks were mailed on September 18, 2009, the agreement does not include the word "after," and so the checks were mailed "within five (5) business days of entry of an Order approving" the agreement. While the agreement did not take effect until the bankruptcy court granted its approval, mailing the severance checks before the effective date of the contract would not render payments made according to its terms illegal.

Moreover, the issue presented in this case is not whether the severance payments were prematurely mailed to the claimants, but rather whether the termination agreement designated a "period" for the severance payments to be considered remuneration under § 27(c), and, if not, whether Checker's September 18, 2009, letter was effective in designating an allocation period under § 48(2). Claimants do not dispute that MCL 421.48(2) provides two alternative methods by which payments like the severance payments at issue here may designated to "periods" for the purpose of "determining . . . benefit payments under section 27(c)[.]" When interpreting and applying the same language at issue to vacation pay, our Supreme Court observed "[T]hat the employer may lawfully designate a period during a layoff for the allocation of vacation pay has been settled in this state." *Brown v LTV Aerospace Corp*, 394 Mich 702, 708; 232 NW2d 656 (1975). "Under § 48, then, the designation may be made in the employment contract or agreement but if it is not, the employer has the authority to make such a designation." *Id*. at 709.

Claimants select certain words and terms in the contract and statute such as "lump sum," and "payment" and "payments" to argue that their former employer Checker could not designate "the period" to which the severance payments in this case "shall be allocated." MCL 421.48(2). We disagree.

When interpreting a statute, the primary goal is to ascertain and effectuate the intent of the Legislature. *United Parcel Service*, 277 Mich App at 202. The intent of the Legislature is found in the terms of the statute, giving its words their plain and ordinary meaning. *Id*.; *In re Kostin Estate*, 278 Mich App 47, 56-57; 748 NW2d 583 (2008). Nontechnical "words and phrases shall be construed and understood according to the common and approved usage of the language . . . ." MCL 8.3a. Where a word used in a statute is undefined, a dictionary may be consulted to discern its common meaning. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). Courts must enforce clear statutory language as written. *Id*.

These same principles apply with respect to construing a contract. *Tenneco*, 281 Mich App at 444, 467; *In re Kostin Estate*, 278 Mich App at 53-54; *Burkhardt v Bailey*, 260 Mich App 636, 656-657; 680 NW2d 453 (2004).

A critical word at issue here in construing and applying § 48(2) is "period." The commonly understood meaning of the word "period" in the context used in the statute here is "an extent of time that is meaningful in the life of a person[.]" *Random House Webster's College Dictionary* (1992). An extent of time has a beginning and an end. Given the statutory scheme that determines unemployment benefits on the basis of a week or weeks, we find that the phrase in § 48(2) of "for the period designated" must refer to a week or weeks which have a beginning and an ending date. This reading of the statute dovetails perfectly with the mandate of § 48(2) that "severance payments" "shall be considered remuneration in determining whether an individual is unemployed under this section and also in determining his or her benefit payments under section 27(c)" and the latter section providing for payment of "a *weekly* benefit rate with respect to the *week* for which the individual earns or receives no remuneration." MCL 421.27(c)(1) (emphasis added). Under this reading of § 48(2), Checker's letter of September 18, 2009, clearly stated "the period designated," i.e., a week or weeks having a beginning and an end, "to which the [severance] payments shall be allocated." This designation applies to the severance payments at issue unless the termination agreement itself, "the contract or agreement providing for the payment," designates a different allocation period. MCL 421.48(2).

The termination agreement specifically provides: "The Debtor will make a *lump sum* severance payment to the Terminated Employees in accordance the following schedule, *covering the period commencing on September 1, 2009*; . . . ." (Emphasis added). Claimants argue that the phrase "lump sum" establishes a "period designated by the contract." We cannot agree because the phrase "lump sum" does not deliniate a period of time having a beginning and an end consisting of a period of weeks. Rather, we agree with the agency that this phrase refers to the method of payment, not a period of allocation. While the termination agreement does state the beginning date of a period to which the severance payments cover, September 1, 2009, it does not state a terminus date of a period of time applicable to any particular payment such that an extent of time, a period, is clearly established. Consequently, we conclude that the phrase in § 48(2) "if there is no contractual specification of the period to which payments shall be allocated, then for the period designated by the employing unit or former employing unit," applies to the severance payments claimants received.

Claimants' argument that Checker's designated allocation of the severance payment made to the several claimants cannot apply because § 48(2) uses both the singular "payment" and the plural "payments" is without merit. The word "payment" in the phrase "for the period designated by the contract or agreement providing for the payment" simply modifies "contract or agreement." A contract or agreement could provide for a singular "lump sum" payment to multiple persons, as here, or could provide for multiple payments to a single individual, or multiple payments to multiple individuals. The focus of this phrase is on the contract or agreement by which the payment was made and whether it designates a period to which the payment should be allocated as remuneration. In construing a statute, "[e]very word importing the singular number only may extend to and embrace the plural number, and every word importing the plural number may be applied and limited to the singular number." MCL 8.3b.

Claimants next argue that Checker's designated allocation for the severance payments should not be applied because Checker did not appear in the proceedings below, and the agency improperly assumed the role of advocate rather than decision maker. We disagree. The agency is a proper party to these proceedings. MCL 421.38(3); MCL 421.34(3).[5] Moreover, the agency has broad powers to issue subpoenas and conduct an investigation into a claimant's eligibility for unemployment benefits. MCL 421.9; MCL 421.32; MCL 421.32a. With respect to an inquiry regarding benefits, while the employer may be represented at agency proceedings, MCL 421.31, it is the claimant that has the burden of proof regarding eligibility. MCL 421.28; *Dwyer*, 321 Mich at 187; *Taylor v United States Postal Service*, 163 Mich App 77, 80-81; 413 NW2d 736 (1987). As our Supreme Court has explained, a person is entitled to benefits under the act only if the person satisfies the agency that he or she meets the conditions of eligibility. *Dwyer*, 321 Mich at 186. In making an eligibility determination, the agency

> is not bound to consider only the testimony and other evidence introduced before it by the parties to the controversy. It may, under the provisions of section 9 of the act, upon its own motion, issue subpoenas and compel any person to attend and testify before it with reference to any matter within the scope of its inquiry or investigation. [*Id*.]

Consequently, claimants' argument that the agency exceeded its authority fails.

We affirm. No costs are assessable, a public question being involved. MCR 7.219.

/s/ Peter D. O'Connell
/s/ David H. Sawyer
/s/ Jane E. Markey

---

[5] See n 3, *supra*.