UNITED PARCEL SERVICE, INC v
BUREAU OF SAFETY AND REGULATION

Docket No. 269720. Submitted September 11, 2007, at Lansing. Decided
November 15, 2007, at 9:00 a.m. Leave to appeal sought.

United Parcel Service, Inc. (UPS), filed an appeal in the Ingham
Circuit Court after an administrative hearing officer in the Bureau
of Safety and Regulation upheld citations alleging that UPS had
failed to assess two of its aircraft repair facilities to determine
whether there were hazards necessitating that employees use
personal protective equipment (PPE). The Board of Health and
Safety Compliance and Appeals had adopted the legal conclusions
of the hearing officer. The court, James R. Giddings, J., ruled that
because the plain language of Mich Admin Code, R 408.13308(1)
requires a hazard assessment at each workplace, the hearing
officer did not abuse his discretion in concluding that assessments
performed at other, allegedly similar UPS facilities did not meet
this standard. UPS appealed.

The Court of Appeals *held*:

The hearing officer committed a substantial and material error
of law by ruling that an employer's conducting a representative
hazard assessment of one or more similar workplaces, and imple-
menting that assessment at multiple locations where identical job
tasks are performed for a single employer, could not satisfy Mich
Admin Code R 408.13308(1). The plain text of R 408.13308(1) does
not mandate that an employer perform a separate hazard assess-
ment at each workplace in the state; rather, it sets a performance-
oriented standard that requires an employer to assess the work-
place to determine if hazards that necessitate the use of PPE are
present or are likely to be present, and it does not specify how the
employer must make this assessment. Because the respondent did
not allege or prove the existence of an unidentified hazard requir-
ing the use of PPE, those portions of the citations that allege
violations of R 408.13308(1) at UPS's Lansing and Romulus
aircraft repair facilities must be vacated.

Reversed and remanded for further proceedings.

ADMINISTRATIVE LAW — WORKER SAFETY — WORKPLACE ASSESSMENTS.

> The rule requiring an employer to assess its workplaces to determine whether hazards that necessitate the use of personal protective equipment are present or are likely to be present does not require the employer to perform a separate hazard assessment at each of its multiple and similar workplaces where an assessment was conducted in one of these workplaces (Mich Admin Code, R 408.13308[1]).

*Dykema Gossett PLLC* (by *Martin Jay Galvin* and *James F. Hermon*) and *Gibson, Dunn & Crutcher LLP* (by *Baruch A. Fellner, Matthew R. Estabrook,* and *John W.F. Chesley*) for the petitioner.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Richard P. Gartner*, Assistant Attorney General, for the respondent.

Amici Curiae:

*Price, Heneveld, Cooper, DeWitt & Litton LLP* (by *Jason Leonard Budd*) for the National Federation of Independent Business Legal Foundation and the Chamber of Commerce of the United States.

Before: MARKEY, P.J., and SAAD and WILDER, JJ.

MARKEY, P.J. Petitioner United Parcel Service, Inc. (UPS), appeals by leave granted the circuit court's order affirming administrative rulings upholding two civil citations that alleged UPS violated Mich Admin Code, R 408.13308(1), by failing to assess its aircraft repair facilities located at Lansing and Romulus to determine if hazards necessitating the use of personal protective equipment (PPE) were present. We conclude that the plain text of the rule mandates that an employer "assess the workplace to determine if hazards that necessitate the use of personal protective equip-

ment are present or are likely to be present." The rule does not specify how the employer must make this assessment. Accordingly, we hold that the hearing officer committed a "substantial and material error of law," MCL 24.306(1)(f), by ruling that a representative hazard assessment of one or more similar workplaces where identical job tasks are performed can never satisfy R 408.13308(1). We reverse the circuit court's order affirming the rulings and report of the hearing officer and remand for entry of an order vacating those parts of the citations alleging that UPS violated R 408.13308(1).

## I. FACTS AND PROCEEDINGS

UPS appeals two civil citations that allege it violated Mich Admin Code, R 408.13308(1), adopted under the authority of Michigan's Occupational Safety and Health Act,[1] MCL 408.1001 *et seq.* Upon a violation of the act or a rule promulgated under it, MCL 408.1035 provides that the enforcing agency may assess a civil penalty in an amount dependent on the culpability of the violator. The act affords an aggrieved party the right to a hearing conducted in accordance with the procedures applicable to a contested case under the Administrative Procedures Act (APA), MCL 24.201 *et seq.* See MCL 408.1042 and MCL 408.1043. The Board of Health and Safety Compliance and Appeals (the board) decides the appeal after receiving the hearing officer's report. MCL

---

[1] MIOSHA, the acronym by which this statute is commonly known, is also the acronym for the Michigan Occupational Safety and Health Administration, the current general enforcement agency of Michigan's work-safety regulations. We use MIOSHA in this opinion to refer to the enforcement agency. At the time of the instant citations, the enforcement agency was the General Industry Safety Division of the Bureau of Safety and Regulation. See <http://www.michigan.gov/cis/0,1607,7-154-11407_15349-37888--,00.html> accessed September 17, 2007.

408.1004(3); MCL 408.1044; MCL 408.1046. "The report of the hearing officer shall become the final order of the board within 30 days after filing with the board and parties, unless a member of the board directs that the report be reviewed and acted upon by the board." MCL 408.1042. An aggrieved party, such as UPS, may obtain judicial review of the board's decision pursuant to the APA. See MCL 408.1044(3).

Both federal regulations, issued under the Occupational Safety and Health Act (OSHA), 29 USC 651 *et seq.*, and state regulations require employers to assess workplaces to determine if hazards necessitating the use of PPE are present. The Michigan rule provides:

> (1) An employer shall assess the workplace to determine if hazards that necessitate the use of personal protective equipment are present or are likely to be present. If the hazards are present or are likely to be present, then the employer shall do all of the following:
>
> (a) Select, and have each affected employee use, the types of personal protective equipment that will protect the affected employee from the hazards identified in the hazard assessment.
>
> (b) Communicate selection decisions to each affected employee.
>
> (c) Select the personal protective equipment that properly fits each affected employee. [Mich Admin Code, R 408.13308(1).]

The federal rule provides:

> (1) The employer shall assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE). If such hazards are present, or likely to be present, the employer shall:
>
> (i) Select, and have each affected employee use, the types of PPE that will protect the affected employee from the hazards identified in the hazard assessment;

(ii) Communicate selection decisions to each affected employee; and,

(iii) Select PPE that properly fits each affected employee. [29 CFR 1910.132(d).]

UPS supports the air division of its package delivery business by operating 63 aircraft repair facilities throughout the United States and its territories. UPS contracted with Keter Consultants, Inc. (Keter), to conduct a study of its aircraft facilities throughout the country to determine what hazards are present in these work environments and the PPE necessary to protect workers from those hazards. Keter determined, and UPS agreed, that the framework of federal regulations the Federal Aviation Administration imposed on aircraft facilities had such a homogenizing effect on UPS aircraft repair facilities that it rendered uniform the hazards presented to employees at these workplaces. Keter concluded that UPS could satisfy its obligations under the federal standard by conducting a single representative assessment at its central hub in Louisville, Kentucky, because all the operations at the other aircraft repair facilities were also conducted at the Louisville facility and FAA regulations mandated that the operations be performed in the same manner at each facility. Keter performed a comprehensive hazard assessment at the Louisville facility and also validated the assessment by inspecting UPS's Des Moines, Iowa, facility. UPS implemented the Keter assessment at all its airport facilities, including those in Michigan. Keter did not actually inspect the Michigan facilities.

UPS asserts that an aircraft mechanics union official filed 63 identical complaints concerning each of its aircraft repair facilities across the country, disputing the validity of the Keter assessment that UPS had implemented. UPS contends that federal OSHA offices

initiated 40 investigations that resulted in 13 inspections, 27 letter resolutions, and no prosecutions. State and United States territory complaints resulted in 23 investigations by 20 field offices of 12 state and territorial agencies. UPS contends that none of these inspections, except the two Michigan workplaces in Lansing and Romulus, resulted in a citation for violating 29 CFR 1910.132(d)(1) or the analogous state rule. UPS asserted below and asserts on appeal that these nonprosecutions constitute federal precedent that its representative workplace assessment for necessary PPE satisfies the federal rule, and, under Michigan law, must also be deemed to satisfy Michigan's substantially identical rule. UPS, however, did not establish these factual allegations at an evidentiary hearing during its administrative appeal. Rather, the parties each submitted motions for summary disposition to the hearing officer. The hearing officer ruled that UPS had not supported its factual claim regarding the 61 other complaints with documentary evidence other than by submitting a chart that UPS had prepared.

The MIOSHA inspector(s) initially drafted the citations at issue alleging that UPS conducted inadequate PPE assessments at its Lansing and Romulus facilities, but the final citations alleged with respect to each facility: "Assessment conducted at central location and not validated at each worksite."

UPS's administrative appeal was submitted to the hearing officer on the parties' reciprocal motions for summary disposition, without an evidentiary hearing. The hearing officer rejected UPS's submitted evidence regarding the "detail on the process and conclusions of the workplace hazard assessments in Louisville, Kentucky and Des Moines, Iowa" as being "not material." The hearing officer considered the legal question pre-

sented to be "whether any workplace hazard assessment performed anywhere else could satisfy" R 408.13308(1) with respect to workplaces in Lansing and Romulus. In that regard, the hearing officer rejected UPS's claim that its Michigan facilities and those in Louisville and Des Moines were "identical" or "fungible." But the hearing officer agreed that the two out-of-state facilities were "typical or representative"—apparently given the context of petitioner's Michigan facilities. Nevertheless, the hearing officer reached a legal conclusion that served as the foundation for affirming the citations: "[S]ince [UPS] did not 'validate' its out-of-state assessments at the Michigan workplaces, [UPS] did not perform workplace assessments at all." On this basis, the hearing officer rejected UPS's argument that respondent had not shown that the Keter assessments were inadequate or deficient, and the hearing officer therefore concluded that "any inadequacy or deficiency in the assessments is not relevant to this case."

The hearing officer recognized that R 408.13308(1) and 29 CFR 1910.132(d)(1) set forth substantially the same standard. But the hearing officer concluded that the plain text "shall assess the workplace" in Michigan's rule, requires a separate hazard assessment at each workplace. The hearing officer reasoned that the focus of the standard is on assessing the workplaces, not just general hazards. On the basis of the legal conclusion noted earlier, the hearing officer ruled that, "[s]ince [UPS] has not assessed the Michigan workplaces, [UPS] has not complied with the standard."

To further support this ruling, the hearing officer cited R 408.13308(2), which provides:

> (2) An employer shall verify that the required workplace hazard assessment has been performed through a written

certification which identifies the document as a certification of hazard assessment and which specifies all of the following information:

(a) The workplace evaluated.

(b) The person who certifies that the evaluation has been performed.

(c) The date of the hazard assessment. [Mich Admin Code, R 408.13308.]

The hearing officer reasoned that if "hazard assessments at representative workplaces were adequate, there would be no reasonable need to prepare written certifications for each of the other workplaces."

The hearing officer rejected UPS's argument that Michigan's standard, like the federal standard, is "performance-oriented," so it can be satisfied by a representative assessment. The hearing officer again reasoned that UPS had not performed a hazard assessment at its two Michigan facilities, citing "Appendix B to Subpart I — Non-mandatory Compliance Guidelines for Hazard Assessment and Personal Protective Equipment Selection." See 59 Fed Reg 16334, 16362 (April 6, 1994), now codified at 29 CFR 1910. This nonmandatory guideline for complying with the federal standard suggests conducting "a walk-through survey of the areas in question." *Id.* The hearing officer therefore determined that UPS's representative assessment had not complied with the nonmandatory Appendix B to the federal standard. Consequently, the hearing officer granted summary disposition to respondent and denied summary disposition to UPS with respect to the allegations in the two citations of a violation of R 408.13308(1). The parties later stipulated that the violations were not serious and that no penalty was warranted. Because no member directed further board

review, the hearing officer's report became the final board decision. See MCL 408.1042.

UPS appealed. In an opinion dated December 16, 2005, the circuit court disagreed with UPS's claim that the worksites were so fungible that an assessment of one site would suffice to provide accurate depictions of hazards found at all workplaces. The court found that the hearing officer's rationale for his decision was unexceptionable, i.e., that the plain language of R 408.13308(1) requires a hazard assessment at each workplace; therefore, petitioner had not assessed its Michigan workplaces. Like the hearing officer, the court concluded that the rule's requirement is site-specific, apparently finding support for this conclusion in R 408.13308(2). Thus, the circuit court ruled that the hearing officer's decision was not arbitrary or capricious, nor an abuse of discretion.

The circuit court then determined that the Michigan and federal rules are "virtually identical," so that MCL 408.1046(6) required Michigan's rule "be construed and applied in a manner consistent with the authority of the federal standard and of the federal agency and courts that interpret it." But the court determined that UPS had failed to identify any federal authority directly addressing 29 CFR 1910.132(d)(1) to support its position that hazard assessments may be conducted at a limited number of representative workplaces. Thus, the court concluded that the board did not err by adopting the hearing officer's conclusions of law.

The circuit court also found no error in the hearing officer's ruling that MIOSHA need not establish the existence of an unassessed hazard to prove a violation of R 408.13308(1) because the rule "is predicated on the presumed existence of a hazard when its terms are not met." Finally, the court noted that respondent articu-

lated a rational connection between the undisputed facts and the choices made, and that the law supported the board's decision. Accordingly, the circuit court affirmed the administrative rulings upholding the two citations at issue and entered its order on March 27, 2006.

## II. STANDARD OF REVIEW

Section 106 of the APA provides:

(1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

(a) In violation of the constitution or a statute.

(b) In excess of the statutory authority or jurisdiction of the agency.

(c) Made upon unlawful procedure resulting in material prejudice to a party.

(d) Not supported by competent, material and substantial evidence on the whole record.

(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

(f) Affected by other substantial and material error of law.

(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings. [MCL 24.306; see, also, Const 1963, art 6, § 28.]

With respect to agency fact-finding, this standard of review accords great deference to administrative expertise in choosing between two reasonably differing views. *Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 62-64; 678 NW2d 444 (2003); *Traverse Oil Co v Chairman, Natural Resources Comm*, 153 Mich App

679, 691; 396 NW2d 498 (1986). But, in this case, the hearing officer affirmed the citations the agency issued to UPS on the basis of what the hearing officer determined to be the undisputed material facts and his interpretation of relevant state and federal statutes and regulations. The interpretation and application of statutes and government regulations adopted pursuant to statutory authority present questions of law, which we review de novo. *People v Lanzo Constr Co*, 272 Mich App 470, 474; 726 NW2d 746 (2006). The rules of statutory construction apply to both statutes and administrative rules. *Romulus, supra* at 65.

When interpreting a statute, our primary goal is to ascertain and give effect to the intent of the Legislature. *Michigan State Bldg & Constr Trades Council, AFL-CIO v Director, Dep't of Labor*, 241 Mich App 406, 411; 616 NW2d 697 (2000). We must first look to the specific language of the statute or rule, and if "the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted." *Id*. We may not read into a statute or rule that which is not within the manifest intention of the Legislature as gathered from the statute or rule itself. See *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). "Only where the language under review is ambiguous may a court properly go beyond the words of the statute or administrative rule to ascertain the drafter's intent." *Romulus, supra* at 65. This Court "will generally defer to the construction of [an ambiguous] statute or administrative rule given by the agency charged with administering it." *Id*. But deference to an agency's construction of a statute or rule is not binding on the judiciary, nor can it overcome a statute's plain meaning. *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13, 23-24; 678 NW2d 619 (2004). This Court "will not defer to the administrative agen-

cy's interpretation of a rule where the language of the rule is unambiguous, or [the Court is] convinced that [the] agency's interpretation is 'clearly wrong.' " *Romulus, supra* at 65-66 (internal citation omitted).

### III. ANALYSIS

Both parties support their positions by citing the plain text of R 408.13308(1). UPS argues that the rule's text does not specify the means by which an employer must "assess the workplace," i.e., it does not state that an assessment must physically be conducted at each worksite. Rather, UPS argues that the rule is a performance standard conferring discretion on employers to select the means to achieve the standard's goals. UPS also argues that the text of the rule, the pattern of administrative enforcement, and commercial practice deprived it of fair notice that MIOSHA would require physical site-by-site hazard assessments.

Respondent argues that, when read together, the plain language of MCL 408.1002,[2] R 408.13308(1), and R 408.13301[3] requires that an employer complete a hazard assessment at each workplace within this state. Respondent also argues that petitioner's due process claim is not properly before the Court because UPS did not assert such a claim in its application for leave to appeal.

The National Federation of Independent Business Legal Foundation and the Chamber of Commerce of the

---

[2] MCL 408.1002(1) provides: "This act shall apply to all places of employment in the state" with exceptions not relevant to this case.

[3] Mich Admin Code, R 408.13301 provides: "This standard shall apply to all places of employment in this state and includes requirements by the employer and use by the employee of personal protective equipment and provides reasonable and adequate means, ways, and methods for the proper selection and safe use of this equipment."

United States of America, by their brief amicus curiae, argue that the plain language of R 408.13308(1) does not set forth how an employer must "assess the workplace." Further, neither the agency nor the Legislature has defined "assess." This silence, amici curiae argue, is purposeful because the rule, like its federal counterpart, is a performance-oriented provision which leaves to the discretion of the employer how to achieve the rules' objective: identifying specific job task hazards that necessitate the selection and implementation of appropriate PPE to ensure the safety of employees.

We agree with respondent that UPS failed to preserve its constitutional due process claim. The issue of notice was raised by the hearing officer's ruling that UPS "certainly knew it did not assess the Lansing and Romulus workplaces" and also "knew, or should have known, that the standard required the assessments." Nevertheless, it does not appear that UPS raised a specific challenge below by asserting that its right to constitutional due process was violated. Further, a review of UPS's application for leave to appeal fails to reveal any claim of a due process violation. Thus, MCR 7.205(D)(4) precludes our review unless we determine that exceptional circumstances warrant invoking this Court's authority under MCR 7.216(A). We decline to address UPS's constitutional claim because this case can be resolved on nonconstitutional grounds. See *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993).

We hold that the plain text of R 408.13308(1) supports amici curiae and petitioner's interpretation of the rule. The text of the rule does not mandate that an employer perform a separate hazard assessment *at* each workplace in the state. Rather, the text requires an employer to "assess the workplace to determine if

hazards that necessitate the use of personal protective equipment are present or are likely to be present." The rule does not specify how the employer must make this assessment. The hearing officer committed a substantial and material error of law by ruling that an employer's conducting a representative hazard assessment of one or more similar workplaces and implementing that assessment at multiple locations where identical job tasks are performed for a single employer could never satisfy R 408.13308(1).

We reach the same conclusion by applying authoritative interpretations of the identical federal standard. MCL 408.1046(6) requires that R 408.13308(1) be interpreted consistently with the federal interpretation of the identical federal standard, 29 CFR 1910.132(d)(1). The federal standard is "a performance-oriented provision which simply requires employers to use their awareness of workplace hazards to enable them to select the appropriate PPE for the work being performed." 59 Fed Reg 16334, 16336 (April 6, 1994). Here, MIOSHA did not allege or prove the existence of a hazard for which UPS failed to require PPE. For this reason, the citations alleging that UPS violated R 408.13308(1) at its Michigan facilities must be dismissed.

The pertinent part of Mich Admin Code, R 408.13308(1) provides: "An employer shall assess the workplace to determine if hazards that necessitate the use of personal protective equipment are present or are likely to be present." Nowhere does the rule specify how an employer must assess the workplace. UPS correctly notes that respondent's argument that R 408.13308(1) applies to all workplaces in the state adds nothing to the question presented. UPS concedes this point, noting that MIOSHA only objects to the manner in which

petitioner assessed its Michigan workplaces, i.e., on the basis of representative assessments of out-of-state workplaces where the job tasks performed are the same as the job tasks performed in Michigan.

Respondent equates "assess" with "examine," "evaluate," "observe," and "look." But the ordinary meaning of the word "assess," as defined in *Random House Webster's College Dictionary* (1992), includes "estimate officially the value" for tax purposes, "to determine the amount of," "to impose a tax or other charge," and "to estimate or judge the value, character, etc., of; evaluate." Read in the context of the rule, then, the plain meaning of "assess" would include "evaluate" or "estimate or judge," but not necessarily include, examine, observe, and look. Respondent's interpretation of the of the rule thus violates principles of statutory construction by adding to the plain meaning of the text of the rule the requirement that an employer with multiple similar workplaces where identical tasks are performed must examine, observe, and look at each workplace separately to evaluate for hazards requiring PPE. Nothing may be read into a statute or rule that is not within the manifest intention of the Legislature as gathered from the statute or rule itself. *Roberts, supra* at 63; *Romulus, supra* at 65.

We also reject respondent's argument, accepted by the hearing officer and adopted by the circuit court, that R 408.13308(2) supports its interpretation of the rule. That rule requires an employer to certify in writing that the required workplace hazard assessment has been performed with a document that includes all of the following information: (a) the workplace evaluated; (b) the person who certifies that the evaluation has been performed; and (c) the date of the hazard assessment. The hearing officer reasoned that if "hazard

assessments at representative workplaces were adequate, there would be no reasonable need to prepare written certifications for each of the other workplaces." We disagree. A written certification of a workplace based on a representative assessment elsewhere would serve at least two key functions consistent with the underlying purpose of this work-safety regulation: (1) that an employer's representative assessment applied with equal force to the specific workplace certified, and that (2) the assessment required by R 408.13308(1) had been completed for the workplace certified.

The parties agree that Michigan and federal OSHA standards are of two types: performance-oriented standards, which set goals or results to be achieved, and specific standards, which describe in detail what an employer must do to comply. The Occupational Safety and Health Review Commission (OSHRC) has described performance-oriented standards as follows:

> A performance-oriented standard sets out the criteria to be met through safe workplace performance-oriented goals. As such, specific requirements are not always addressed; rather, the goals of what is meant to be accomplished are addressed. A performance-oriented standard gives employers the flexibility to adapt the rule to the needs of the workplace situation, instead of having to follow specific rigid requirements. [*Secretary of Labor v Tree of Life, Inc*, 2001 OSAHRC Lexis 87, *18 n 7.]

The plain text of R 408.13308(1) fits this description. Indeed, respondent concedes this point, but argues that UPS's representative assessment plan was no assessment at all. Respondent supports this contention by reading into the rule a requirement that the assessment be performed by means of a physical inspection and evaluation of each workplace premises rather than an evaluation of identical tasks performed at multiple locations. As noted already, the text of the rule does not

require that employers assess the workplace in the manner MIOSHA asserts. Thus, the text of R 408.13308(1) supports the conclusion that it is a performance-oriented standard.

This conclusion is buttressed, if not required, by the interplay between MCL 408.1046(6), R 408.13308(1), and 29 CFR 1910.132(d)(1). The statute provides:

> In construing or applying any state occupational safety or health standard which is identical to a federal occupational safety and health standard promulgated pursuant to 29 U.S.C. section 651 et seq., the board shall construe and apply the state standard in a manner which is consistent with any federal construction or application by the occupational safety and health review commission created pursuant to 29 U.S.C. section 661. [MCL 408.1046(6).]

The first question in determining whether this statute applies to this case is to decide whether Mich Admin Code, R 408.13308(1) and 29 CFR 1910.132(d)(1) provide for the same "standard." With respect to occupational safety and health regulations, "standard" means "a health or safety standard which specifies conditions, or the adoption or use of 1 or more practices, means, methods, operations, or processes necessary to provide safe and healthful employment in places of employment." MCL 408.1006(5). Thus, although Mich Admin Code, R 408.13308(1) and 29 CFR 1910.132(d)(1) are worded slightly differently, they state the identical standard. Both the state and federal standards embodied in Mich Admin Code, R 408.13308(1) and 29 CFR 1910.132(d)(1), respectively, require an employer to assess the workplace to determine if hazards that necessitate the use of PPE are present or are likely to be present and to select and implement the use of appropriate PPE. The state and federal standards are identical. Accordingly, MCL 408.1046(6) requires the Board

of Health and Safety Compliance and Appeals (the board) to "construe and apply the state standard [embodied in R 408.13308(1)] in a manner which is consistent with any federal construction or application by the occupational safety and health review commission" of the identical federal standard embodied in 29 CFR 1910.132(d)(1).

We decline to decide whether the rule of construction stated in MCL 408.1046(6) operates on "any federal construction" or only on those "by the occupational safety and health review commission," as respondent argues.[4] The OSHRC has clearly construed 29 CFR 1910.132(d)(1) as a performance-oriented standard, opining in *Tree of Life*:

> [T]he OSHA standards for personal protective equipment ("PPE") are found in Subpart I of 29 C.F.R. 1910. Subpart I is performance oriented and contains guidance for the selection and use of PPE. It also contains non-mandatory Appendices A and B that provide guidance as to PPE for eye, face, head, foot and hand hazards. *See* 59 Fed. Reg. 16,362, April 6, 1994, and 59 Fed. Reg[.] 33,911, July 1, 1994. The standard requires that employers ensure that protective equipment be provided, used, and maintained in sanitary and reliable condition, as necessary, to protect employees from workplace hazards. It also requires employers to ensure compliance with the individual requirements for particular types of PPE where articulated hazards are present. *See* 29 C.F.R. 1910.133 through 138. The employer must perform a hazard assessment in order to determine what PPE is needed. *See* 29 C.F.R. 1910.132(d). The hazard assessment will disclose the information needed to select the appropriate PPE for any hazards

---

[4] We also note that UPS failed to establish the factual basis or cite persuasive legal authority for its claim that the failure of federal authorities to issue a citation regarding its other aircraft repair facilities constitutes an authoritative interpretation of the federal standard.

present or likely to be present at a particular workplace. [*Tree of Life, supra,* 2001 OSAHRC Lexis *17-18.]

Respondent also fails in its effort to distinguish *Secretary of Labor v White Wave, Inc,* 2004 OSAHRC Lexis 19; 20 OSHC (BNA) 1784. Contrary to respondent's argument, UPS performed a hazard assessment of its Michigan aircraft repair facilities, albeit not in the manner that respondent believed R 408.13308(1) required. *White Wave* was a decision by a hearing officer appointed by the commission. The report of a hearing officer becomes the final order of the commission if within thirty days a commission member does not direct the commission itself to review the report. 29 USC 661(j). In *White Wave,* the employer appealed an OSHA citation alleging a violation of 29 CFR 1910.132(d)(1). It was alleged that the employer "did not assess the workplace to determine if hazards are present, or are likely to be present, which necessitate the use of personal protective equipment (PPE)." *White Wave, supra,* 20 OSHC at 1785. In deciding the appeal, the hearing officer determined that the employer had conducted a hazard assessment and that the OSHA inspector had not established the existence of an unidentified, unprotected hazard. The hearing officer opined:

Section 1910.132(d) requires that the employer determine if hazards are present or likely to be present in the work place that necessitate the use of personal protective equipment (PPE). The evidence establishes that White Wave conducted such a hazard assessment. Complainant maintains, however, that Respondent failed to include sterilization of the tempeh cooker with bleach in its hazard assessment. The uncontradicted deposition of White Wave's plant manager establishes that Respondent considered the task, but found no hazard requiring the use of PPE. The cited standard does not require the documentation of every determination made while conducting the

hazard assessment. It requires only that hazards requiring PPE be identified. Thus, *there can be no violation of the cited standard if the Secretary fails to show the existence of such a hazard by a preponderance of the evidence.* In this case, the CO never saw the cited operation performed, and relied solely on inferences he made after interviewing Charles Turner. At the hearing, however, Turner testified that pouring bleach into the tempeh hopper posed no splash hazard. On this record this judge cannot find a violation of § 1910.132(d). Citation 1, item 1a, is vacated. [*White Wave, supra,* 2004 OSAHRC Lexis *7 (emphasis added).]

We also find misplaced respondent's reliance on Appendix B to argue that a walk-through of each workplace is necessary to comply with 29 CFR 1910.132(d)(1). Among the nonmandatory guidance offered in Appendix B is the suggestion that the employer conduct a "walk-through survey of the areas in question" to identify sources of hazards to workers. Of course, by its own terms, compliance with Appendix B is not mandatory. It cannot overcome OSHA's determination in adopting 29 CFR 1910.132(d)(1). In summarizing the adopted final version of the rule, OSHA stated:

OSHA proposed to add a new paragraph, (d), to § 1910.132 to address the selection of PPE. OSHA proposed to require employers to select the PPE for their employees based on an assessment of the hazards in the workplace, and the hazards which employees are likely to encounter. . . .

OSHA believes that a hazard assessment is an important element of a PPE program because it produces the information needed to select the appropriate PPE for the hazards present or likely to be present at particular workplaces. The Agency believes that the employer will be capable of determining and evaluating the hazards of a particular workplace. *Paragraph (d) of the final rule is a performance-oriented provision which simply requires employers to use their awareness of workplace hazards to*

*enable them to select the appropriate PPE for the work being performed.* Paragraph (d) clearly indicates that the employer is accountable both for the quality of the hazard assessment and for the adequacy of the PPE selected. [59 Fed Reg 16334, 16336 (April 4, 1994) (emphasis added).]

Although a walk-through of the workplace may be a suggested or recommended method of conducting an assessment of its potential hazards, 29 CFR 1910.132(d)(1) still embodies a performance-oriented standard which grants discretion to employers "to use their awareness of workplace hazards to enable them to select the appropriate PPE for the work being performed." Indeed, in conducting its representative workplace assessments for hazards requiring PPE, UPS did conduct walk-through evaluations of workplaces it believed depicted conditions and hazards likely to be encountered at all its workplaces across the country. Thus, UPS used its awareness of workplace hazards to enable it to select the appropriate PPE for the work being performed at all its workplaces, including those in Lansing and Romulus.

In this case, as in *White Wave*, UPS performed a hazard assessment of all its aircraft repair facilities through its representative study. MCL 408.1046(6) requires that R 408.13308(1) be construed consistent with the identical federal standard embodied in 29 CFR 1910.132(d)(1). Both the Michigan and federal standard are performance-oriented, granting discretion to employers "to use their awareness of workplace hazards to enable them to select the appropriate PPE for the work being performed." 59 Fed Reg 16334, 16336 (April 4, 1994); see, also, *Tree of Life, supra,* 2001 OSAHRC Lexis *17-18 n 7. The parties agree that to prove a violation of a performance-oriented standard, the enforcing agency must prove "actual exposure to a hazardous condition independent of non-compliance with

the regulations." *Mayflower Vehicle Sys, Inc v Chao*, 68 Fed Appx 688, 692 (CA 6, 2003). Rather than attempting to prove that UPS failed to identify through its representative assessment a hazardous condition that " 'a reasonably prudent employer, concerned with the safety of his employees, would recognize,' " *id.*, quoting *Ray Evers Welding Co v Occupational Safety & Health Review Comm*, 625 F2d 726, 731 (CA 6, 1980), respondent argued that UPS's assessment was not an assessment as a matter of law. For the reasons we have discussed, it was error for the board and the circuit court to adopt respondent's erroneous legal arguments. Because respondent did not allege or prove the existence of an unidentified hazard requiring the use of PPE, those portions of the citations alleging a violation of R 408.13308(1) with respect to UPS's Lansing and Romulus aircraft repair facilities must be vacated.

We reverse and remand for entry of an order vacating those portions of the citations at issue alleging petitioner failed to comply with Mich Admin Code, R 408.13308(1) at petitioner's Lansing and Romulus aircraft repair facilities. We do not retain jurisdiction.