# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of CLARK.

---

DEPARTMENT OF COMMUNITY HEALTH,

      Appellant,

v

ESTATE OF VIOLET M. CLARK, by Personal
Representative LARRY ALLEN WYKLE,

      Appellee.

UNPUBLISHED
May 28, 2015


No. 320720
Calhoun Probate Court
LC No. 2013-000599-CZ

---

Before: Boonstra, P.J., and Saad and MURRAY, JJ.

PER CURIAM.

Plaintiff Department of Community Health ("DCH" or "the Department") appeals the trial court's order that granted summary disposition to defendant Estate of Violet Clark. For the reasons stated below, we reverse and remand for entry of an order granting summary disposition to the Department.

## I. FACTS AND PROCEDURAL HISTORY

This case involves the Medicaid estate recovery program, which allows state governments to recover certain medical expenses paid for by Medicaid upon the death of recipients aged 55 years or older. *West Virginia v Thompson*, 475 F3d 204, 207–208 (CA 4, 2007). As our Court recently explained, the Michigan Legislature, in 2007, designated DCH as the state entity responsible for recovering Medicaid benefits from the estates of deceased beneficiaries, through a new set of provisions contained at MCL 400.112g, *et seq. In re Estate of Keyes*, ___ Mich App ___; ___ NW2d ___ (2015), 2015 WL 1737621, slip op at *1. If a decedent's estate is of modest value, the decedents' heirs or representatives may apply for a hardship exemption from estate recovery. *Id.*, slip op at *3.

-1-

Defendant Larry Wykle enrolled his mother,[1] decedent Violet Clark, in Medicaid on June 15, 2012, to help pay for Clark's stay in a nursing home. Clark was over 55 years old at the time. As part of the enrollment application, Wykle received a list of "acknowledgements" that explained the conditions under which Medicaid would provide benefits to his mother. These enumerated conditions included a section on "estate recovery," which informed Wykle that, upon Clark's death, DCH might seek to recover the expenses it incurred for her care by seizing assets from her estate. In relevant part, the acknowledgement stated:

> Estate Recovery. I understand that upon my death the Michigan Department of Community Health has the *legal right to seek recovery from my estate* for services paid by Medicaid. . . . An estate consists of real and personal property. Estate Recovery only applies to certain Medicaid recipients who received Medicaid services after the Implementation date of the program. *MDCH may agree not to pursue recovery* if an undue hardship exists. For further information regarding Estate Recovery, call 1-877-791-0435. [Emphasis added.]

Wykle signed the application form, and, in so doing, admitted that he had "received and reviewed a copy of the Acknowledgements that explains additional information about applying for and receiving Medicaid"—i.e., that he was aware the state could recover the cost of his mother's medical care by seizing assets from her estate. Medicaid began to pay for Violet Clark's nursing-home expenses in June 2012, and did so until her death on November 9, 2012. Over this five-month period, Medicaid paid Clark's nursing home $13,360.18.

After his mother's death, Wykle became the personal representative of her estate. The only substantial asset in Clark's estate was her Battle Creek home, which was valued, under the state evaluation method, at $40,806 at the time of Clark's death. Using the same evaluation method, the average price of a home in Calhoun County in 2012 was $43,325.23. As such, according to the State Plan, Clark's home, upon application by Wykle, was likely eligible for a "hardship exemption" from estate recovery.

On December 28, 2012, DCH sent a Notice of Intent to Wykle's home informing him that it intended to recover some or all of the $13,360.18 in Medicaid expenses from Clark's estate.[2] The notice explained that DCH might waive the estate recovery in the event of "hardship," and detailed the application process as follows:

> If no statutory exemptions apply, but an heir or beneficiary can demonstrate that recovery would result in an undue hardship, then MDCH may waive its claim against an estate. *To apply for a hardship waiver, please contact our office at the address or phone number listed below. You must submit a completed Hardship Waiver Application within 60 days* of the date of [the Notice of Intent.] Failure to

---

[1] Wykle served as Clark's authorized representative for his mother's Medicaid application.

[2] It is not disputed that Clark's nursing home expenses are recoverable expenses under MCL 400.112g, *et seq*.

timely submit a Hardship Waiver Application will result in denial of the Hardship Waiver Request, and MDCH will continue its recovery efforts. If you apply for a Hardship Waiver and are denied, you may appeal the decision under the Administrative Procedures Act, MCL 24.201-24.328, within 60 days of receiving the notice of denial. [Emphasis added.]

Strangely, Wykle never applied for a hardship waiver within 60 days of December 28, 2012. Instead, almost 15 months after receiving notice of the possibility DCH might seek to recover expenses from his mother's estate, his attorneys sent DCH a letter on March 26, 2013, in which they explained that Wykle would not permit DCH to recover assets from Violet Clark's estate. The letter noted that Clark's estate included one asset, her Battle Creek home, which was of insufficient value to permit DCH to recover Medicaid expenses from the estate. In April 2013, DCH brought suit against Clark's estate to recover the $13,860.18 it made in Medicaid payments during Clark's five-month stay in the nursing home.

Wykle filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10). Among other things, he claimed that MCL 400.112g prohibited DCH from recovering assets from his mother's estate because: (1) MCL 400.112g(3)(e)(*i*) created a blanket exemption from recovery for homes that are valued at "equal to or less than 50% of the average price of a home in the county in which the Medicaid recipient's homestead is located as of the date of the medical assistance recipient's death"; and (2) MCL 400.112g(7) and MCL 400.112g(3)(e)(*i*) required DCH, at the time Clark enrolled in Medicaid, to notify Wykle (a) that it might seek recovery against his mother's estate, and (b) provide him materials explaining how to seek an exemption from estate recovery for "undue hardship."

In response, DCH moved for summary disposition under MCR 2.116(I)(2). It noted that Wykle had never applied for a hardship waiver from estate recovery, and argued that Wykle's statutory arguments misinterpreted the Social Welfare Act. DCH claimed that MCL 400.112g(3)(e)(*i*) did not actually create a statutory mandate that prohibited estate recovery against low-valued homes, nor did it require DCH to provide Wykle with information on the hardship-waiver application process when he enrolled his mother in Medicaid. Moreover, DCH said it complied with the notice provisions of MCL 400.112g(7) when, upon Clark's enrollment in Medicaid, it gave Wykle notice that Clark's Medicaid benefits were subject to recovery from her estate.

The trial judge held a motion hearing and issued its opinion from the bench in January 2014. It granted summary disposition to Wykle and the estate under MCR 2.116(C)(10), and held that DCH could not recover from Clark's estate because: (1) Clark's estate consisted solely of a "modest homestead" within MCL 400.112g(3)(e)(*i*); and (2) DCH failed to comply with the notice provisions of MCL 400.112g(3)(e)(*i*), which required it to provide materials to Wykle on how to apply for a hardship waiver when he enrolled his mother in Medicaid in June 2012. The trial court did not address whether Wykle's failure to apply for a hardship waiver from estate recovery made his defenses against DCH's action irrelevant.

DCH appealed the trial court's decision in March 2014, and makes the same arguments here as it did at the motion hearing. Wykle asks us to uphold the ruling of the trial court.

## III. STANDARD OF REVIEW

A trial court's decision to grant summary disposition is reviewed de novo. *Karaus v Bank of New York Mellon*, 300 Mich App 9, 16; 831 NW2d 897 (2012). "Summary disposition pursuant to MCR 2.116(C)(10) tests the factual support for a claim based on the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. The evidence is viewed in the light most favorable to the nonmoving party." *Id.* (citations omitted).

Matters of statutory interpretation, which include the construction of administrative rules and interpretations, are also reviewed de novo. *United Parcel Service, Inc v Bureau of Safety and Regulation*, 277 Mich App 192, 201–202; 745 NW2d 125 (2007).

## IV. ANALYSIS

A court's objective when interpreting statutory language is to give effect to the Legislature's intent by focusing on the statute's plain language. *Madugula v Taub*, 496 Mich 685, 696; 853 NW2d 75 (2014). "A court does not construe the meaning of statutory terms in a vacuum." *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008). Rather, "words and phrases used in an act should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole, and a word or phrase should be given meaning by its context or setting." *Hannay v Dept of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014). "A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained." *In re MKK,* 286 Mich App 546, 556; 781 NW2d 132 (2009).

"The Legislature is presumed to be familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory language." *Id.* Principles of statutory interpretation apply to the construction of administrative rules and interpretations. *City of Romulus v Mich Dept of Environmental Quality*, 260 Mich App 54, 65; 678 NW2d 444 (2003).

Here, Wykle's arguments raise three issues, namely whether: (1) his failure to apply for a waiver from the estate recovery program is dispositive in favor of DCH's claims against his mother's estate; (2) MCL 400.112g(3) prohibits DCH from pursuing estate recovery against low-valued homes; and (3) DCH complied with the notice requirements of MCL 400.112g(7) and MCL 400.112g(3). We address each issue in turn.

### A. WYKLE'S FAILURE TO APPLY FOR A HARDSHIP WAIVER[3]

---

[3] Though DCH did not raise Wykle's failure to apply for a hardship waiver in its initial brief on appeal—however, DCH did raise the issue it in its reply brief—the issue is essential to the disposition of this case. As it is not disputed that Wykle did not apply for a hardship waiver, we may review the issue as "all the facts necessary for its resolution are before the Court." *Henderson v Dept of Treasury*, 307 Mich App 1, 8; 858 NW2d 733 (2014).

MCL 400.112g and the Michigan Medicaid State Plan (the "State Plan")[4] imply that a beneficiary's survivors must apply for a waiver from estate recovery, and demonstrate that recovery would cause them undue hardship. MCL 400.112g(3) states:

(3) The department of community health shall seek appropriate changes to the Michigan medicaid state plan and shall apply for any necessary waivers and approvals from the federal centers for medicare and medicaid services to implement the Michigan medicaid estate recovery program. The department of community health shall seek approval from the federal centers for medicare and medicaid regarding all of the following:

* * *

(e) Under what circumstances the estates of medical assistance recipients will be exempt from the Michigan medicaid estate recovery program because of a hardship. At the time an individual enrolls in medicaid for long-term care services, the department of community health shall provide to the individual written materials *explaining the process for applying for a waiver from estate recovery due to hardship*. [Emphasis added.]

Likewise, the July 2010 State Plan implies that a Medicaid beneficiary must apply for a hardship waiver to be exempt from estate recovery:

The following standards and procedures are used by the State for waiving estate recoveries when recovery would cause an undue hardship, or when recovery is not cost-effective.

Review of hardship waivers begins with the State's vendor. The vendor, in accordance with its contract with the State, *reviews all incoming waiver applications* and makes an initial recommendation to accept or deny and sends it to the Estate Recovery Specialist. [July 2010 State Plan, 4.17(5) (emphasis added).]

In its explanation of the notices it sends to next of kin after the death of a Medicaid recipient, the July 2010 State Plan further explains:

The NOI [notice of intent] provides the State's definition of an undue hardship *along with a contact phone number and address to request an undue hardship application. . . .* Lastly, the NOI states that adverse decisions may be appealed under the Administrative Procedures Act, (MCL 24.201-24.328) within 60 days

---

[4] The Michigan Medicaid State Plan is an administrative document that outlines the benefits received by Michigan Medicaid beneficiaries, and the terms under which the beneficiaries accept those benefits.

of receiving notice of the State's final decision. [July 2010 State Plan, 4.17(7); emphasis added.]

In sum, to receive a hardship waiver from estate recovery under the State Plan, a Medicaid recipient (or their representative) must: (1) apply for a hardship waiver; and (2) meet the definition of "undue hardship" provided by the State Plan.

At the trial court, DCH stated that Wykle never applied for a hardship waiver—an accusation that Wykle, notably, did not address in the motion hearing and does not address on appeal. In fact, at oral argument, Wykle's attorney admitted that his client had never applied for a hardship waiver.

Again, Wykle received a letter from DCH dated December 28, 2012, which clearly informed him of DCH's intent to recover money from Violet Clark's estate for her nursing-home expenses. The letter told Wykle that he could apply for a hardship waiver and explained how to do so.[5] But Wykle—despite the fact that his mother's estate almost certainly would have qualified for a hardship waiver—did not apply for a hardship waiver. He cannot now attempt to avail himself of the waiver's benefits without having followed the procedural rules necessary to claim the benefit. For this reason alone, the trial court erred when it granted summary disposition to Wykle, and was required by law to grant summary disposition to DCH.

## B. MCL 400.112G(3)(E)(*I*): THE HARDSHIP EXEMPTION

In relevant part, MCL 400.112g(3) provides:

(3) The department of community health shall seek appropriate changes to the Michigan medicaid state plan and shall apply for any necessary waivers and approvals from the federal centers for medicare and medicaid services to implement the Michigan medicaid estate recovery program. The department of community health shall seek approval from the federal centers for medicare and medicaid regarding all of the following:

---

[5] Again, the Notice of Intent delivered to Wykle stated:

If no statutory exemptions apply, but an heir or beneficiary can demonstrate that recovery would result in an undue hardship, then MDCH may waive its claim against an estate. *To apply for a hardship waiver*, please contact our office at the address or phone number listed below. You must submit a completed Hardship Waiver Application within 60 days of the date of [the Notice of Intent.] Failure to timely submit a Hardship Waiver Application will result in denial of the Hardship Waiver Request, and MDCH will continue its recovery efforts. If you apply for a Hardship Waiver and are denied, you may appeal the decision under the Administrative Procedures Act, MCL 24.201-24.328, within 60 days of receiving the notice of denial. [Emphasis added.]

* * *

(e) Under what circumstances the estates of medical assistance recipients will be exempt from the Michigan medicaid estate recovery program because of a hardship. At the time an individual enrolls in medicaid for long-term care services, the department of community health shall provide to the individual written materials explaining the process for applying for a waiver from estate recovery due to hardship. The department of community health shall develop a definition of hardship according to section 1917(b)(3) of title XIX that includes, but is not limited to, the following:

(*i*) An exemption for the portion of the value of the medical assistance recipient's homestead that is equal to or less than 50% of the average price of a home in the county in which the medicaid recipient's homestead is located as of the date of the medical assistance recipient's death. [MCL 400.112g(3).]

Accordingly, MCL 400.112g(3) merely instructs DCH to seek approval from the federal government on the topics enumerated in its subsections. *In re Estate of Keyes*, slip op at \*4. It is not a binding mandate that prohibits DCH from pursuing estate recovery against estates that include homes valued at "equal to or less than 50% of the average price of a home in the county in which the medicaid recipient's homestead is located as of the date of the medical assistance recipient's death." *Id.* Wykle's arguments to the contrary are a misinterpretation of this plain statutory language, and have been explicitly rejected by our Court. *Id.*[6]

### C. NOTICE PROVISIONS

#### 1. MCL 400.112G(7)

---

[6] Moreover, as DCH correctly observes in its brief, other sections of MCL 400.112g explicitly order DCH's estate recovery program to carry out certain mandates:

(2) The *department of community health shall establish* an estate recovery program including various estate recovery program activities.

* * *

(8) The *department of community health shall not charge* interest on the balance of any Michigan medicaid estate recovery payments. [MCL 400.112g(2) and MCL 400.112g(8); emphasis added.]

If the Legislature had wanted to automatically prohibit DCH from pursuing estate recovery against estates that included homes valued at "equal to or less than 50% of the average price of a home in the county in which the medicaid recipient's homestead is located as of the date of the medical assistance recipient's death," it would have prefaced such language with an explicit mandate, as in MCL 400.112g(2) and MCL 400.112g(8).

MCL 400.112g(7) reads:

The department of community health shall provide written information to individuals seeking medicaid eligibility for long-term care services describing the provisions of the Michigan medicaid estate recovery program, including, but not limited to, a statement that some or all of their estate may be recovered.

As noted, the Department provides this written information to Medicaid enrollees seeking long-term care services at the time of enrollment, in an "acknowledgement" form that accompanies the application. The section of this acknowledgement form on the estate recovery program provides:

Estate Recovery. I understand that upon my death the Michigan Department of Community Health has the legal right to seek recovery from my estate for services paid by Medicaid. . . . An estate consists of real and personal property. Estate Recovery only applies to certain Medicaid recipients who received Medicaid services after the Implementation date of the program. MDCH may agree not to pursue recovery if an undue hardship exists. For further information regarding Estate Recovery, call 1-877-791-0435.

Here, Wykle received the "acknowledgement" sheet that contained the above information, verbatim, with his mother's Medicaid application. Wykle signed the application form, and, in so doing, admitted that he had "received and reviewed a copy of the Acknowledgements that explains additional information about applying for and receiving Medicaid"—i.e., that he was aware the state might attempt to recover the cost of his mother's medical care by seizing assets from her estate.

Accordingly, Wykle plainly received "written information" that informed him "some or all of [his mother's] estate may be recovered" to pay for Medicaid expenses, as part of the application to enroll his mother in Medicaid. DCH thus complied with MCL 400.112g(7) and Wykle's claim to the contrary is without merit.

2. MCL 400.112G(3)

Again, in relevant part, MCL 400.112g(3) reads:

(3) The department of community health shall seek appropriate changes to the Michigan medicaid state plan and shall apply for any necessary waivers and approvals from the federal centers for medicare and medicaid services to implement the Michigan medicaid estate recovery program. The department of community health shall seek approval from the federal centers for medicare and medicaid regarding all of the following:

* * *

(e) Under what circumstances the estates of medical assistance recipients will be exempt from the Michigan medicaid estate recovery program because of a hardship. At the time an individual enrolls in medicaid for long-term care

-8-

services, the department of community health shall provide to the individual written materials explaining the process for applying for a waiver from estate recovery due to hardship. [MCL 400.112g(3)(e).]

Again, MCL 400.112g(3) instructed DCH to *ask* the federal government if the Michigan State Plan could require DCH to provide "written materials explaining the process for applying for a waiver from estate recovery due to hardship" at the time the "individual enrolls in medicaid for long-term care." *In re Estate of Keyes*, slip op at *4. MCL 400.112g(3) was not and is not a binding mandate that requires DCH to provide "written materials explaining the process for applying for a waiver from estate recovery due to hardship" at the time the "individual enrolls in medicaid for long-term care." *Id*. As such, DCH had no obligation to provide Wykle with information on how to apply for a waiver from estate recovery at the time he enrolled his mother in Medicaid.[7]

## V. CONCLUSION

Accordingly, we reverse the trial court's grant of summary disposition to defendants, and remand for entry of an order that grants summary disposition to plaintiff. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Christopher M. Murray

---

[7] Logically, DCH should not be required to provide information on how to apply for a hardship waiver at the time of enrollment. What is needed at the time of enrollment is a notice that DCH might attempt to recover Medicaid expenses from the recipient's estate—which DCH must provide with all enrollment applications, pursuant to MCL 400.112g(7) as discussed above.

By contrast, the Medicaid recipient does not need to know *how* to apply for a hardship waiver. This is because DCH may only recover Medicaid payments from an estate after the recipient dies. It is therefore only the *survivor* who needs to have knowledge of how to apply for a hardship waiver. He will ideally be informed how to do so after the Medicaid recipient has died, when DCH begins to pursue estate recovery. And, here, Wykle was so advised.