*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHAD MORROW,

      Petitioner-Appellant,

v

SECRETARY OF STATE,

      Respondent-Appellee.

UNPUBLISHED
December 1, 2022

No. 358508
Wayne Circuit Court
LC No. 21-004810-AL

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

Petitioner Chad Morrow filed a claim of appeal challenging a circuit court ruling upholding a hearing officer's determination that Morrow failed to meet the minimum requirements for restoration of his driver's license. Whether Morrow may appeal as of right from the order entered by the circuit court presents a question we need not answer today. Because the circuit court failed to apply correct legal principles, we treat his claim of appeal as an application and grant it. *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

The hearing examiner's decision, which was affirmed by the circuit court, imposed two prerequisite conditions on Morrow's eligibility for a restricted driver's license: production of the presentence investigation reports (PSIRs) from his marijuana-related convictions in 2016 and 2017, and production of Morrow's medical marijuana card. Both conditions contravene Michigan law. Accordingly, we vacate the circuit court's opinion and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND LEGAL BACKGROUND

Morrow is considered an "habitual offender" due to two convictions for intoxicated driving within seven years. MCL 257.303(2)(c). In 2004, Morrow's license was suspended following his convictions for operating while impaired by liquor and for driving while his license was withdrawn. In January 2007, he was granted a restricted license. But in November 2007, Morrow was involved in an accident and his license was revoked for operating while intoxicated. In February 2016, Morrow was granted a restricted license, which required him to refrain from using intoxicants and to only operate a vehicle equipped with a breath alcohol ignition interlock device

(BAIID). His restricted license was revoked twice because of BAIID violations but restored in October 2017. In 2018, Morrow's restricted license was again suspended and subsequently reinstated following his conviction for delivery of marijuana. In October 2018, the revocation was reinstated following another BAIID violation.

The Legislature has created a pathway for the restoration of a revoked driver's license, even for habitual offenders like Morrow. Morrow filed petitions seeking restoration of his license in 2019 and 2021; this appeal arises from the denial of his 2021 petition, which hinged on a ruling made during the 2019 proceedings. A hearing officer appointed by the secretary of state considered both petitions. MCL 257.322(1). Morrow bore the burden of rebutting "by clear and convincing evidence the presumption resulting from the prima facie evidence that he or she is a habitual offender." MCL 257.303(4)(b), as amended by 2012 PA 498.[1] He was also obligated to meet "the requirements of the department." MCL 257.303(4)(c). Those requirements are contained in Mich Admin Code, R 257.313(1)(a), and include:

> The hearing officer shall not order that a license be issued to the petitioner unless the petitioner proves, by clear and convincing evidence, all of the following:
>
> (i) That the petitioner's alcohol or substance abuse problems, if any are under control and likely to remain under control.
>
> (ii) That the risk of the petitioner repeating his or her past abusive behavior is a low or minimal risk;
>
> (iii) That the risk of the petitioner repeating the act of operating a motor vehicle while impaired by, or under the influence of, alcohol or controlled substances or a combination of alcohol and a controlled substance or repeating any other offense listed in section 303(1)(d), (e), or (f) or (2)(c), (d), (e), or (f) of the act is a low or minimal risk.
>
> (iv) That the petitioner has the ability and motivation to drive safely and within the law . . . .

A hearing examiner denied Morrow's petition in 2019, and a different hearing examiner denied his 2021 petition. At the 2021 administrative hearing, Morrow testified that he was 39 years old and had two convictions for impaired or intoxicated driving, the first in 2004 and the second in 2007. Morrow presented a favorable substance abuse evaluation and the results of several negative alcohol and drug tests. He admitted to having used marijuana as a teenager, and testified that he had been sober from alcohol and marijuana for 10 years. He declared that he was motivated to remain sober and believed that could do so in part because of this active participation in Alcoholics Anonymous and a supportive community of friends and family.

---

[1] MCL 257.303 was amended by 2020 PA 376, effective October 1, 2021, with only minor changes to the language of Subsections 2 and 4.

Morrow testified that he had a medical marijuana caregiver card from 2011 until 2017 and operated a medical marijuana dispensary from 2015 to 2017. He was convicted by guilty plea of two counts of delivery of marijuana to undercover police officers outside of his caregiver plan, which he claimed arose due because of a disagreement regarding the zoning laws governing his dispensary. Morrow attributed his BAIID violations to vehicle repair issues and denied any elevated blood alcohol readings in 2017.

The hearing officer issued a written opinion denying the restoration of Morrow's driving privileges, relying in large measure on Morrow's failure to "submits proofs of his claims as to why he was convicted of two drug crimes (2016 and 2017), and what if any certification he held from the State of Michigan to be involved in [the] production/distribution of cannabis." The hearing officer found that Morrow was "unable to meet [his] burden" of proving by clear and convincing evidence "that he is a good risk to sustain recovery and to avoid re-offense" due to his failure to comply "with specific evidence requirements given him in his prior hearing order."

"The prior order," issued in 2019, required that Morrow produce "for the next hearing":

6) verification from the Department of Licensing and Regulatory Affairs, [LARA], when Mr. Morrow had a medical marijuana card. An online form is available for this.

7) a complete [PSIR] or its equivalent regarding Mr. Morrow's drug crimes in 2016 and 2017 to provide an independent account of his offenses.[2]

After the 2021 denial of his request for license restoration, Morrow filed a petition for review in the circuit court.[3] In his circuit court pleadings, Morrow asserted that the hearing officer abused his discretion by disregarding powerful evidence substantiating that Morrow met the conditions for restoration of his license, and instead improperly required Morrow to submit the PSIRs and his medical marijuana card. Morrow emphasized that he had presented clear and convincing evidence that his alcohol and drug use disorders were in remission, an expert had reported that he had a favorable prognosis for recovery, and that he had abstained from the use of alcohol and marijuana since 2009, satisfying all requirements for a restricted license. The hearing officer's decision was not supported by competent, material, and substantial evidence on the whole record, he contended.

In a bench opinion, the circuit court observed that the record reflected an issue regarding whether Morrow had a medical marijuana card "as a caregiver" or "for dispensing." The court also noted that the 2019 hearing officer had ordered Morrow "to provide a complete [PSIR] or its equivalent, regarding Mr. Morrow's drug crimes for 2016, 2017." The court summarized:

---

[2] It appears that at the time of the 2021 hearing, Morrow produced all the other materials requested by the 2019 hearing examiner.

[3] MCL 257.323(1) provides that "[a] person aggrieved by a final determination of the secretary of state . . . revoking, suspending, or restricting an operator's or chauffeur's license . . . may petition for a review of the determination in the circuit court . . . ."

I believe the documents indicated that the underlying criminal crime had to do with [Morrow] selling marijuana to an undercover police officer. So, I think the - - the point was that the hearings [sic] officer wanted to see, because of this discrepancy in terms of whether or not [Morrow] had a marijuana - - a medical marijuana license for his own use, as a caregiver, or as a dispensary.

The court concluded that the hearing officer's decision to deny Morrow's request for driving privileges was based on competent, material, and substantial evidence and was not arbitrary or capricious or an abuse of discretion.

Morrow claimed this appeal, contending that the hearing officer abused his discretion by focusing on his failure to produce the PSIRs or the medical marijuana card. The PSIR could not be produced, Morrow contends, under Michigan law. And evidence related to the issuance of a medical marijuana card is off-limits, Morrow asserts, because the issuance of a card cannot be used as a "sword to take negative action against a licensee."

During oral argument in this Court, the parties were instructed to meet and confer and to advise the Court whether they could stipulate to expand the record concerning the availability of Morrow's PSIRs. The parties then stipulated to the admission of an email from Michigan Department of Corrections Regional Manager Donald Nolan stating that he was not allowed to release a copy of a PSIR "except as allowed by statute." The statute Nolan cited in his email, MCL 791.229, prohibits the release of "all records and reports of investigations made by a probation officer, and all case histories of probationers," except to "[j]udges and probation officers" and others named in the statute, none of whom include Morrow or Secretary of State hearing officers.

## II. ANALYSIS

The hearing officer erred by conditioning Morrow's license restoration on production of his PSIRs and his medical marijuana card. As the parties now agree, Morrow cannot produce his PSIRs to a hearing officer. Because the PSIRs are not subject to production, the hearing officer improperly relied on Morrow's alleged failure to produce it as a reason to deny license restoration.

As noted above, MCL 257.323(1) permits "[a] person aggrieved by a final determination of the secretary of state denying the person an operator's or chauffeur's license . . . or revoking, suspending, or restricting an operator's or chauffeur's license" to petition for a review of that determination in the circuit court. The scope of the circuit court's review is described in MCL 257.323(4) as follows:

> Except as otherwise provided in this section, in reviewing a determination resulting in a denial, suspension, restriction, or revocation under this act, the court shall confine its consideration to a review of the record prepared under [MCL 257.322 or MCL 257.625f] or the driving record created under [MCL 257.204a] for a statutory legal issue, and may determine that the petitioner is eligible for full driving privileges or, if the petitioner is subject to a revocation under [MCL 257.303], may determine that the petitioner is eligible for restricted driving privileges. The court shall set aside the secretary of state's determination only if 1 or more of the following apply:

-4-

(a) In determining whether a petitioner is eligible for full driving privileges, the petitioner's substantial rights have been prejudiced because the determination is any of the following:

      (i) In violation of the Constitution of the United States, the state constitution of 1963, or a statute.

      (ii) In excess of the secretary of state's statutory authority or jurisdiction.

      (iii) Made upon unlawful procedure resulting in material prejudice to the petitioner.

      (iv) Not supported by competent, material, and substantial evidence on the whole record.

      (v) Arbitrary, capricious, or clearly an abuse or unwarranted exercise of discretion.

      (vi) Affected by other substantial and material error of law.

Our review of the circuit court's decision is even more narrowly circumscribed:

[W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made. [*Boyd v Civil Serv Comm*, 220 Mich App 226, 234-235; 559 NW2d 342 (1996).]

Our interpretation and application of statutory provisions is de novo, without deference to the other jurists who have considered this case. *United Parcel Serv, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 202; 745 NW2d 125 (2007).

Morrow's substantial rights were prejudiced by the hearing officer's insistence that he produce the PSIRs, because a statute prevented him from complying with this request. In affirming that decision the circuit court applied an incorrect legal principle: that Morrow *could* produce the PSIRs. And the hearing officer committed a congruent clear factual error in finding that Morrow had deliberately refused to produce the document.[4]

---

[4] We respectfully disagree with our dissenting colleague's suggestion that a police report is "equivalent" to a PSIR. A police report is generated to support an arrest. Generally, a police report does not include information contrary to a single police officer's perception of events. A police

This was not the only error committed by the hearing officer and the circuit court. In *People v Thue*, 336 Mich App 35, 48; 969 NW2d 346 (2021), this Court explained that the Michigan Medical Marijuana Act, (the MMMA), MCL 333.26421 *et seq.*, includes an "immunity" provision, which provides, in pertinent part, that

> A qualifying patient who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, *or denied any right or privilege*, including, but not limited to, civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marijuana in accordance with this act . . . . [MCL 333.26424(a) (emphasis added).]

In *Thue*, 336 Mich App at 47, we applied this immunity provision to prohibit the revocation of probation based on MMMA-compliant use of marijuana. Here, Morrow's medical marijuana card, regardless of its contents, cannot be used to deny him an opportunity for the restoration of driver's license.

These legal errors require us to vacate and remand to the circuit court for reconsideration of Morrow's appeal based on the legal principles set forth in this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Sima G. Patel

---

report is drafted to support a finding of probable cause for arrest. A PSIR is prepared by a probation officer, and often includes a defendant's version of what led to his or her arrest, and a fuller discussion of the background information. Most critically, at sentencing a defendant has an ability to challenge the factual information contained in a PSIR. No such ability exists with respect to a police report. That said, our holding does not constrain the circuit court from seeking a true "equivalent" to a PSIR if such a document exists.