*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AIRGAS SPECIALTY PRODUCTS,

Petitioner-Appellant,

v

MICHIGAN OCCUPATIONAL SAFETY AND
HEALTH ADMINISTRATION,

Respondent-Appellee.

FOR PUBLICATION
August 26, 2021
9:00 a.m.

No. 351105
Ingham Circuit Court
LC No. 19-000071-AA

Before: SAWYER, P.J., and STEPHENS and RICK, JJ.

RICK, J.

Petitioner, Airgas Specialty Products, appeals by leave granted[1] the circuit court's opinion and order affirming an administrative ruling upholding two citations for violations of 29 CFR 1910.119 issued against petitioner by respondent, Michigan Occupational Safety and Health Administration (MIOSHA). We affirm.

## I. FACTS AND PROCEEDINGS

Petitioner appeals two citations alleging it violated 29 CFR 1910.119, "process safety management of highly hazardous chemicals" standards (PSM Standards), adopted by reference under the authority of Michigan's Occupational Safety and Health Act,[2] MCL 408.1001 *et seq.*, and applicable to "all workplaces" in Michigan. See MCL 408.1014(5); Mich Admin Code, R 325.18301 and 325.18302; *Process Safety Management of Highly Hazardous Chemicals*, 29 CFR 1910.119 (2013). Upon a violation of the act or a rule promulgated under it, MCL 408.1035

---

[1] *Airgas Specialty Prod v Mich Occupational Safety & Health Admin*, unpublished order of the Court of Appeals, entered March 23, 2020 (Docket No. 351105).

[2] MIOSHA, the acronym by which this statute is commonly known, is also the acronym for the Michigan Occupational Safety and Health Administration, the current general enforcement agency of Michigan's work-safety regulations. We use MIOSHA in this opinion to refer to the enforcement agency.

provides that respondent, the enforcing agency, may assess a civil penalty in an amount dependent on the culpability of the violator. A party can appeal the agency's decision with respect to the issuance of a citation and is afforded a hearing in accordance with the procedures applicable to a contested case under the Administrative Procedures Act (APA), MCL 24.201 *et seq.* See MCL 408.1042 and MCL 408.1043. The Board of Health and Safety Compliance and Appeals (the board) decides the appeal after receiving a hearing officer's report. MCL 408.1004(3); MCL 408.1044; MCL 408.1046. "The report of the hearing officer shall become the final order of the board within 30 days after filing with the board and parties, unless a member of the board directs that the report be reviewed and acted upon by the board." MCL 408.1042. An aggrieved party, such as petitioner, may obtain judicial review of the board's decision under the APA. MCL 408.1044(3).

Petitioner received the citations at issue following an inspection of Woodworth, Inc.'s facility in December 2016 and a separate inspection relating to petitioner's activities at the facility in January 2017. Petitioner supplies ammonia for industrial uses. In January 2013, petitioner contracted with Woodworth, Inc., (Woodworth) to provide Woodworth with anhydrous ammonia, which Woodworth used in treating metal parts. Anhydrous ammonia is classified as a "highly hazardous chemical" under the PSM Standards. See 29 CFR 1910.119, Appendix A. The ammonia was held in two large storage tanks owned and maintained by petitioner. The storage tanks, piping and fittings are situated in a "storage cage" outside the Woodworth facility. By contract, those tanks, piping, and fittings in the storage cage are owned and exclusively controlled by petitioner. The ammonia flowed from the petitioner's storage tanks through petitioner's piping valves and into the Woodworth facility. As part of the contract, petitioner was required to maintain the equipment it provided in "good repair and operation" and Woodworth was prohibited from altering, adjusting, or repairing any of the equipment that was provided by petitioner. The contract further provided that petitioner "shall have access at all times to the Site." Petitioner was also required to provide Woodworth "an annual tank inspection/maintenance report."

On April 4, 2017, respondent issued a citation and notification of penalty. Respondent sent petitioner and Woodworth additional citations and notice of penalty on July 5, 2017. The three citations were for violations of 29 CFR 1910.119(d)(3)(*i*)(B) (Citation 2, item 2), (j)(4)(iv) (Citation 2, item 1), and (o)(1) (Citation 1, item 1). Regarding Citation 1, item 1, respondent found that as of April 12, 2017, petitioner had failed to conduct a compliance audit of the ammonia storage facility since the facility became operational in September 2013. Respondent proposed a $2,800 penalty for Citation 1, item 1. Regarding Citation 2, item 1, respondent alleged that petitioner violated 29 CFR 1910.119(j)(4)(iv) by not providing documentation of the storage facility valves, which respondent requested following a number of visual inspections. Specifically, respondent found that "[t]he documentation did not identify each valve with an individual serial number or other type of identifier . . . ." Regarding Citation 2, item 2, respondent alleged that petitioner violated 29 CFR 1910.119(d)(3)(*i*)(B) by not providing piping and instrument diagrams (P&ID's) of the storage system as requested. Respondent did not propose a financial penalty for Citation 2.

A. ADMINISTRATIVE LAW JUDGE DECISION

On September 17, 2017, petitioner appealed the citations to respondent. When the parties were unable to resolve the matter, a contested case hearing was scheduled with the Michigan Administrative Hearing System (MAHS) in front of an administrative law judge (ALJ). On July 20, 2018, petitioner moved for summary disposition. Petitioner argued that the cited provisions of the PSM Standards did not apply to its activities at the Woodworth facility, in part because it was a contractor, not an employer, with respect to the facility. The ALJ denied petitioner's motion for summary disposition with respect to the violations of 29 CFR 1910.119(o)(1) (Citation 1, item 1) and 29 CFR 1910.119(d)(3)(*i*)(B) (Citation 2, item 2). However, the ALJ granted the motion with respect to the violation of 29 CFR 1910.119(j)(4)(iv) (Citation 2, item 1) and vacated that citation.[3]

Discussing whether the PSM Standards applied to petitioner's activities, the ALJ concluded that the language in 29 CFR 1910.119(h), which addresses the responsibilities of "employers," "contract employers," and their employees vis-à-vis each other, was ambiguous. The ALJ concluded it was unclear whether a contractor may also be considered an employer. The ALJ then considered prior federal Occupational Safety and Health Review Commission (OSHRC) decisions and the federal register discussion of the final rule, *Process Safety Management of Highly Hazardous Chemicals*, 57 Fed Reg 6356-6385 (Feb 24, 1992), for guidance to determine the intent of the drafters of 29 CFR 1910.119. The ALJ concluded that petitioner was subject to the requirements of 29 CFR 1910.119(h) and other applicable PSM Standards and that such application was "consistent with OSHA's interpretation and application of the multi-employer worksite doctrine."

The ALJ further found that the division of responsibilities between Woodworth and petitioner established that both were employers. "Irrespective of how remote the possibility," the ALJ reasoned, "one or both storage tanks may fail for any variety of reasons while being filled, serviced and/or maintained, thereby resulting in the potential catastrophic release of anhydrous ammonia[.]" In the event a release did occur, "both Woodworth and [petitioner's] employees are potentially exposed to the risk of significant illness, injury or death." The ALJ also rejected petitioner's assertion that there was only one unified industrial "process" at issue, and that it was controlled by Woodworth, with petitioner merely supplying gas and maintaining storage tanks. The ALJ stated:

> The Petitioner retains control and responsibility over that <u>portion</u> of the process involving the ammonia storage tanks and their associated component parts (valves, piping, etc.). The Petitioner's supply of anhydrous ammonia, a highly hazardous chemical, is an integral component of Woodworth's overall process because without this chemical, Woodworth cannot accomplish the FNC process as envisioned. The Petitioner therefore both creates and controls the hazard attendant to this portion of the process and must therefore comply with the cited PSM

[3] The ALJ concluded that petitioner complied with 29 CFR 1910.1199j)(4)(iv), which is not challenged on appeal.

standards. The Petitioner's assertion that Woodworth controls the entire process is therefore without merit.

The ALJ affirmed Citation 1, Item 1 and Citation 2, Item 2 and the proposed penalty of $2,800.

In November 2018, petitioner filed exceptions to the ALJ's decision and requested it to be reviewed by the board.[4] However, no board member directed review. Respondent concluded, "[i]nasmuch as no member of the Board has directed review within the thirty (30) day time period prescribed by Section 42, the Order and Opinion of the ALJ became a final order of the Board on December 3, 2018."

## B. CIRCUIT COURT

On January 25, 2019, petitioner appealed to the circuit court. Petitioner argued that the cited PSM Standards were inapplicable in this case because it was a contractor, not an employer. Petitioner also argued that the ALJ's decision was not supported by competent, material, and substantial evidence because the allegations in the citations were hearsay. Further, petitioner asserted that the ALJ committed clear legal error and violated its due process rights by not allowing the matter to proceed to a hearing.

Following a hearing, the circuit court affirmed the ALJ's decision and concluded that granting summary disposition to respondent was consistent with MCR 2.116(I)(2). The court held that the ALJ did not err by finding that 29 CFR 1910.119 applied to petitioner. With respect to whether the decision was supported by competent, material, and substantial evidence on the whole record, the court concluded that the decision was supported by the uncontested facts. Although petitioner argued that the ALJ improperly relied on hearsay, the court noted that petitioner failed to identify any specific hearsay statements. With respect to petitioner's due-process claim, the circuit court rejected petitioner's assertion that summary disposition for respondent was improper under Mich Admin Code, R 792.10129(3).[5] The court concluded that petitioner's interpretation of the rule would lead to "inefficiencies and rather absurd results." The court explained:

> If, as here, a party's motion for summary disposition were denied, but an opposing party's was granted, or cross-relief under MCR 2.116(1)(2) were granted, the case would be required to proceed to hearing, notwithstanding the lack of any remaining triable issues. The plain meaning of Mich Admin Code R 792.10129(3) is that the action must proceed to a hearing when summary disposition is denied and the issues targeted in the motion are not otherwise disposed of. The ALJ's decision here disposed of the entire action, and so no hearing was required.

---

[4] Petitioner also filed a motion for reconsideration in September 2018, which neither the ALJ nor the board ruled upon.

[5] Rule 792.10129(3) provides that "[i]f the motion for summary disposition is denied, or if the decision on the motion does not dispose of the entire action, then the action shall proceed to hearing."

This appeal followed. On appeal, petitioner argues that this Court should overturn the circuit court's order upholding the ALJ's decision and dismiss the citations issued by respondent.

## II. STANDARD OF REVIEW

The APA provides the following standard for judicial review of the board's order:

> (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
>
> (a) In violation of the constitution or a statute.
>
> (b) In excess of the statutory authority or jurisdiction of the agency.
>
> (c) Made upon unlawful procedure resulting in material prejudice to a party.
>
> (d) Not supported by competent, material and substantial evidence on the whole record.
>
> (e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.
>
> (f) Affected by other substantial and material error of law.
>
> (2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings. [MCL 24.306. See also Const 1963, art 6, § 28.]

The circuit court must affirm the agency's decision if it "was not contrary to law and was otherwise supported by competent, material, and substantial evidence on the whole record . . . ." *Polania v State Employees' Retirement Sys*, 299 Mich App 322, 328; 830 NW2d 773 (2013). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 431; 906 NW2d 482 (2017) (cleaned up). "Evidence is competent, material, and substantial if a reasoning mind would accept it as sufficient to support a conclusion." *Id.* (cleaned up).

"[W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistinguishable from the clearly erroneous standard of review . . . ." *Boyd v Civil Serv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003).

We review questions of statutory interpretation de novo. *Ayar v Foodland Distrib*, 472 Mich 713, 715, 698 NW2d 875 (2005). The interpretation of administrative regulations is also a question of law that this Court reviews de novo. *In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App 696, 698; 736 NW2d 594 (2007). However, we generally defer to an agency's administrative expertise in making decisions that fall within the agency's charged area of administration. *Id.*; *Dep't of Community Health v Anderson*, 299 Mich App 591, 598; 830 NW2d 814 (2013). An agency's interpretation of a statute "is entitled to respectful consideration," but "cannot conflict with the plain meaning of the statue." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008). The "respectful consideration" standard provides that an agency's decision "ought not to be overruled without cogent reasons." *Id.* (cleaned up). In addition, "an agency's interpretation of its own regulation is of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App at 701 (cleaned up).

"The rules of statutory construction apply to both statutes and administrative rules." *United Parcel Serv, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 202; 745 NW2d 125 (2007). With respect to statutory interpretation generally,

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 506; 778 NW2d 282 (2009) (cleaned up).]

"Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *In re Smith Estate*, 252 Mich App 120, 124; 651 NW2d 153 (2002). Also, "[w]hen considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme." *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 528; 817 NW2d 548 (2012) (cleaned up).

## III. APPLICATION OF THE PSM STANDARDS

On appeal, petitioner first argues that the trial court erred by affirming the ALJ decision and holding that the PSM Standards applied. Petitioner asserts that the cited PSM Standards did not apply to their activities at Woodworth's facility because it was a contractor—not an employer—and, therefore, it cannot be cited for the violations of the PSM Standards that apply solely to employers. We disagree.

The purpose of 29 CFR 1910.119 is to prevent or minimize "the consequences of catastrophic releases of toxic, reactive, flammable, or explosive chemicals." 29 CFR 1910.119 (2013). To this end, the federal Occupational Safety and Health Administration (OSHA) has developed the PSM Standards that address the management of hazardous chemicals. See 29 CFR 1910.119.

In construing or applying any state occupational safety or health standard which is identical to a federal occupational safety and health standard promulgated pursuant to 29 USC section 651 *et seq.*, the board shall construe and apply the state standard in a manner which is consistent with any federal construction or application by the occupational safety and health review commission created pursuant to 29 USC section 661. [MCL 408.1046(6).]

29 USC 661(j) provides:

[An] administrative law judge appointed by the Commission shall hear, and make a determination upon, any proceeding instituted before the Commission and any motion in connection therewith, assigned to such administrative law judge by the Chairman of the Commission, and shall make a report of any such determination which constitutes his final disposition of the proceedings. The report of the administrative law judge shall become the final order of the Commission within thirty days after such report by the administrative law judge, unless within such period any Commission member has directed that such report shall be reviewed by the Commission. [Footnote omitted.]

Accordingly, MCL 408.1046(6) requires that the board "construe and apply the state standard [embodied in Mich Admin Code, R. 325.18301, *et seq*] in a manner which is consistent with any federal construction or application by the occupational safety and health review commission" of the federal standard in 29 CFR 1910.119.

## A. WHO QUALIFIES AS AN EMPLOYER FOR PURPOSES OF APPLYING 29 CFR 1910.119(D)(3)(*I*)(B) AND 29 CFR 1910.119(O)(1)

The two PSM Standards at issue in this appeal are 29 CFR 1910.119(d)(3)(*i*)(B) and 29 CFR 1910.119(o)(1). Standard 1910.119(d) provides, in relevant part:

*Process safety information.* In accordance with the schedule set forth in paragraph (e)(1) of this section, the employer shall complete a compilation of written process safety information before conducting any process hazard analysis required by the standard. The compilation of written process safety information is to enable the employer and the employees involved in operating the process to identify and understand the hazards posed by those processes involving highly hazardous chemicals. This process safety information shall include information pertaining to the hazards of the highly hazardous chemicals used or produced by the process, information pertaining to the technology of the process, and information pertaining to the equipment in the process.

\* \* \*

(3*) Information pertaining to the equipment in the process.* (i) Information pertaining to the equipment in the process shall include:

\* \* \*

-7-

(B) Piping and instrument diagrams (P&ID's);

Standard 1910.119(o) provides:

> *Compliance Audits*.  (1) Employers shall certify that they have evaluated compliance with the provisions of this section at least every three years to verify that the procedures and practices developed under the standard are adequate and are being followed.
>
> (2) The compliance audit shall be conducted by at least one person knowledgeable in the process.
>
> (3) A report of the findings of the audit shall be developed.
>
> (4) The employer shall promptly determine and document an appropriate response to each of the findings of the compliance audit, and document that deficiencies have been corrected.
>
> (5) Employers shall retain the two (2) most recent compliance audit reports.

On appeal, petitioner asserts that it should be considered a contractor, not an employer, for purposes of the PSM Standards at issue on the basis of 29 CFR 1910.119(h).  The ALJ concluded that the language in 29 CFR 1910.119(h) addressing the responsibilities of employers and contract employers was ambiguous because it was unclear whether or not a contractor could also be considered an employer.  The trial court concluded that the ALJ did not err by concluding that the PSM Standards applied to petitioner.  Petitioner argues that the plain language of 29 CFR 1910.119(h) precludes a finding that it can be an employer for purposes of adhering to other PSM Standards.  Petitioner asserts that the plain language of 29 CFR 1910.119(h) "creates an express dichotomy between the responsibilities of 'the employer' who operates and controls the process and those contractors 'performing maintenance or repair, turnaround, major renovation, or specialty work on or adjacent to a covered process.' "  We disagree.

Section 1910.119(h) provides, in pertinent part:

> (1) *Application*.  This paragraph applies to contractors performing maintenance or repair, turnaround, major renovation, or specialty work on or adjacent to a covered process.  It does not apply to contractors providing incidental services which do not influence process safety, such as janitorial work, food and drink services, laundry, delivery or other supply services.
>
> (2) *Employer responsibilities*.  (i) The employer, when selecting a contractor, shall obtain and evaluate information regarding the contract employer's safety performance and programs.
>
> (ii) The employer shall inform contract employers of the known potential fire, explosion, or toxic release hazards related to the contractor's work and the process.

(iii) The employer shall explain to contract employers the applicable provisions of the emergency action plan required by paragraph (n) of this section.

(iv) The employer shall develop and implement safe work practices consistent with paragraph (f)(4) of this section, to control the entrance, presence and exit of contract employers and contract employees in covered process areas.

(v) The employer shall periodically evaluate the performance of contract employers in fulfilling their obligations as specified in paragraph (h)(3) of this section.

(vi) The employer shall maintain a contract employee injury and illness log related to the contractor's work in process areas.

(3) *Contract employer responsibilities*.  (i) The contract employer shall assure that each contract employee is trained in the work practices necessary to safely perform his/her job.

(ii) The contract employer shall assure that each contract employee is instructed in the known potential fire, explosion, or toxic release hazards related to his/her job and the process, and the applicable provisions of the emergency action plan.

(iii) The contract employer shall document that each contract employee has received and understood the training required by this paragraph. The contract employer shall prepare a record which contains the identity of the contract employee, the date of training, and the means used to verify that the employee understood the training.

(iv) The contract employer shall assure that each contract employee follows the safety rules of the facility including the safe work practices required by paragraph (f)(4) of this section.

(v) The contract employer shall advise the employer of any unique hazards presented by the contract employer's work, or of any hazards found by the contract employer's work.

29 CFR 1910.119(h) "applies to contractors performing maintenance or repair, turnaround, major renovation, or specialty work on or adjacent to a covered process.  It does not apply to contractors providing incidental services which do not influence process safety, such as janitorial work, food and drink services, laundry, delivery or other supply services."  29

CFR 1910.119(h)(1). "Contractor," and "contract employer" are not expressly defined in the PSM Standards. See 29 CFR 1910.119(b) (2013); MCL 408.1004.[6]

Although 29 CFR 1910.119(h) defines "contractors" in relation to the duties involved under this section, as opposed to other entities who supply "incidental services," it does not discuss whether a contractor can also be an employer for purposes of other PSM Standards. Under this subrule, contractors are entities "performing maintenance or repair, turnaround, major renovation, or specialty work on or adjacent to a covered process." 29 CFR 1910.119(h)(1). Subrule (h)(2) lists six responsibilities for the "employer" of a contractor, and Subrule (h)(3) lists five responsibilities for the "contract employer" with respect to a "contract employee." None of these provisions state that a contract employer cannot also be deemed an "employer" for purposes of applying other PSM Standards.

The category of "contract employer" in 29 CFR 1910.119(h) itself implies that a contractor can be both an employee and an employer, i.e., the employer of a "contract employee." Additionally, subrule (h)(2)(i) states: "The employer, when selecting a contractor, shall obtain and evaluate information regarding the *contract employer's* safety performance and programs." (Emphasis added.) This subsection thus mandates that an employer consider the contractor's performance as a contract "employer" with respect to safeguarding its employees. Moreover, when subrules (h)(2) and (3) are read together, they effectively establish a chain of command and responsibilities, with the contractor in the center. For example, subrule (h)(2)(ii) mandates that an employer "inform contract employers of the known potential fire, explosion, or toxic release hazards related to the contractor's work and the process." In turn, subrule (h)(3)(ii) requires that the contract employer itself "assure that each contract employee is instructed in the known potential fire, explosion, or toxic release hazards related to his/her job and the process, and the applicable provisions of the emergency action plan." Accordingly, 29 CFR 1910.119(h) appears to recognize, and apply, the multi-employer worksite doctrine. The use of the multi-employer worksite doctrine is also supported by the MIOSHA-COM-04-1R6 agency instruction.[7] For example, the instruction provides:

> A. Multi-Employer Work Sites. On multi-employer work sites (in all industry sectors), *more than one employer may be citable for a hazardous condition that violates a MIOSHA standard*. A two-step process must be followed in determining whether more than one employer is to be cited. All facts considered in the two-step process shall be documented in the case file. [MIOSHA-COM-04-1R5, § XI(A) (emphasis added).]

---

[6] We note that the Michigan Occupational Safety and Health Act defines "employer" as "an individual or organization, including this state or a political subdivision, that employs 1 or more persons." MCL 408.1005(2).

[7] MIOSHA Agency Instruction, *Multi-Employer Work Sites*, MIOSHA-COM-04-1R6 (September 3, 2020), available at <https://adms.apps.lara.state.mi.us/File/ViewDmsDocument/12774> (accessed May 12, 2021).

The agency instruction defines "Controlling Employer," in part, as "[a]n employer who has general supervisory authority over the work site, including the power to correct safety and health violations . . . . Control can be established by contract or, in the absence of explicit contractual provisions, by the exercise of control in practice." MIOSHA-COM-04-1R5, § XI(E). Further discussing "control established by contract," the instruction provides that "[i]n this case, the employer has a specific contract right to control safety. To be a controlling employer, the employer must itself be able to prevent or correct a violation or to require another employer to prevent or correct the violation." MIOSHA-COM-04-1R5, § XI(E)(5). Although MIOSHA's interpretative statement alone cannot be relied on to resolve this case, see MCL 24.232(5)[8]; see also *Brang, Inc v Liquor Control Comm*, 320 Mich App 652, 662; 910 NW2d 309 (2017). This interpretation does not conflict with the plain language of 29 CFR 1910.119. It is also supported by binding OSHRC decisions.

In concluding that the PSM Standards applied to petitioner and that such application was consistent with OSHA's interpretation and application of the multi-employer worksite doctrine, the ALJ considered and applied the recent OSHRC decisions *Perez v Jacobs Field Servs of North America, Inc, & Its Successors*, 2015 OSHD (CCH) P33445 (February 5, 2015) (Docket No. 13-1623), available at <https://www.oshrc.gov/assets/1/6/13-1623.pdf?251> (accessed May 11, 2021), and *Secretary of Labor* v *Southern Pan Services Co*, 2015 OSHD (CCH) P33428 (December 18, 2014) (Docket No. 08-0866), available at <https://www.oshrc.gov/assets/1/6/08-08661.pdf?2791> (accessed May 11, 2021).

The respondent in *Perez* was a resident maintenance contractor at a facility owned by a Dutch manufacturing company. *Perez*, p 4. Like petitioner in the instant case, the respondent argued that, because it was a contractor, its activities were only subject to 29 CFR 1910.119(h) and, therefore, it was not required to comply with the other subsections of the PSM Standards for which it was cited. *Id*. at 2-3, 9-10. Although the ALJ considered the preamble to the final rule of the PSM Standards, *Process Safety Management of Highly Hazardous Chemicals; Explosives and Blasting Agents*, 57 Fed Reg 6356, 6384-6385 6389 (February 24, 1992), it ultimately concluded that *Southern Pan* was controlling and rejected the respondent's argument. *Perez*, pp 10-11.

In *Perez*, the ALJ found "no merit in [the respondent's] assertion that it had no obligation to comply with the cited subsections of the PSM standard because they did not specifically refer

---

[8] MCL 24.232(5) provides:

A guideline, operational memorandum, bulletin, interpretive statement, or form with instructions is not enforceable by an agency, is considered merely advisory, and must not be given the force and effect of law. An agency shall not rely upon a guideline, operational memorandum, bulletin, interpretive statement, or form with instructions to support the agency's decision to act or refuse to act if that decision is subject to judicial review. A court shall not rely upon a guideline, operational memorandum, bulletin, interpretive statement, or form with instructions to uphold an agency decision to act or refuse to act.

to the *contract employer* . . . . As the exposing employer, [the respondent] was responsible for all violative conditions to which its employee had access." *Id.* at 13. Further, the ALJ concluded, "[a]s the Commission emphatically held in *Southern Pan*, the Secretary must establish that the cited standard applies to the cited *conditions*, not to the cited *employer*." *Id.*

In the instant case, the ALJ applied *Perez* and explained that *Perez* rejected "the contractor's attempt to draw a bright-line distinction between an 'employer' and 'contractor.' " The ALJ concluded that these cases supported respondent's position, stating:

> The [*Perez*] and *Southern Pan* decisions demonstrate that the focus of liability for compliance with PSM standards is on the "cited condition," and, in determining who to hold responsible, OSHA " . . . will look at who created the hazard, who controlled the hazard and whether all reasonable means were taken to deal with the hazard."

Applying these considerations to the instant case, the ALJ concluded that petitioner was subject to the requirements of 29 CFR 1910.119(h) and other applicable PSM Standards. The ALJ reasoned that this conclusion was in keeping with the precept that there can be multiple employers operating at a single worksite. The ALJ also concluded that the division of responsibilities between Woodworth and petitioner established that both were employers. "Irrespective of how remote the possibility," the ALJ reasoned, "one or both storage tanks may fail for any variety of reasons while being filled, serviced and/or maintained, thereby resulting in the potential catastrophic release of anhydrous ammonia," and in the event a release does occur, "both Woodworth and [petitioner's] employees are potentially exposed to the risk of significant illness, injury or death."

We conclude that the circuit court's order and ALJ's decision regarding the application of the PSM standards to petitioner are supported by *Perez v Jacobs Field Servs of North America, Inc, & Its Successors*, 2015 OSHD (CCH) P33445 (February 5, 2015) (Docket No. 13-1623), available at <https://www.oshrc.gov/assets/1/6/13-1623.pdf?251> (accessed May 11, 2021).

In the instant case, the ALJ also considered the preamble to the final rule of the PSM Standards to examine "OSHA's intent in promulgating the PSM standards . . . ." We note that MCL 24.232(5) provides, in pertinent part, "[a] court shall not rely upon a guideline, operational memorandum, bulletin, interpretive statement, or form with instructions to uphold an agency decision to act or refuse to act."[9] However, the ALJ's application of *Perez* was consistent with MCL 408.1046(6), requiring that the board "construe and apply the state standard [embodied in Mich Admin Code, R. 325.18301, *et seq*] in a manner which is consistent with any federal construction or application by the occupational safety and health review commission" of the federal standard in 29 CFR 1910.119. Petitioner asserts that the preamble to the PSM Standards supports its argument that a contractor should not be treated as "the employer." However, as discussed in *Perez*, this argument has no merit. See *Perez*, p 13.

---

[9] "Guideline" is defined as "an agency statement or declaration of policy that the agency intends to follow, that does not have the force or effect of law, and that binds the agency but does not bind any other person." MCL 24.203(7).

Petitioner also argues that that the ALJ erred in concluding that *Perez* was binding precedent because the decision was issued by an ALJ, not the OSHRC. However, petitioner's argument has no merit. 29 USC 661(j) provides, in pertinent part "[t]he report of the administrative law judge shall become the final order of the Commission within thirty days after such report by the administrative law judge, unless within such period any Commission member has directed that such report shall be reviewed by the Commission." Accordingly, under 29 USC 661(j), when the commission in *Perez* allowed the ALJ decision to stand, it became the final order of the commission.

Further, this Court has applied this principle to a MIOSHA case where the interpretation in question was based on a federal ALJ decision. In *United Parcel Serv, Inc*, 277 Mich App 192 at 193-196, MIOSHA, the respondent, attempted to distinguish a federal OSHA interpretation of an equivalent rule concerning assessments to determine whether the use of personal protective equipment was necessary at the petitioner's various repair facilities. This Court determined that the respondent failed to distinguish a factually similar federal OSHA ruling. *Id*. at 210-211. We expressly noted that even though the federal decision was made "by a hearing officer appointed by the commission," it "becomes the final order of the commission" if no member directs review. *Id*. at 210. This Court then quoted the federal hearing officer's interpretation of the disputed rule at length and applied it to the dispute. *Id*. at 210–211. Considering the plain language of MCL 408.1046(6) and 29 USC 661(j), along with the analysis in *United Parcel Serv, Inc*, we conclude that neither the ALJ nor the circuit court erred by applying *Perez's* analysis to the instant case and concluding that the cited PSM Standards applied to petitioner.

## B. COMPLIANCE WITH 29 CFR 1910.119(D)(3)(I)(B) AND (O)(1)

Next, petitioner argues that it cannot be held responsible for any of the cited PSM Standards because Woodworth created and controlled the "process." Petitioner asserts that there was only one unified industrial "process" at issue and it was created and controlled by Woodworth, with petitioner merely supplying gas and maintaining storage tanks. Under the PSM Standards, "process" means

> any activity involving a highly hazardous chemical including any use, storage, manufacturing, handling, or the on-site movement of such chemicals, or combination of these activities. For purposes of this definition, *any group of vessels which are interconnected and separate vessels which are located such that a highly hazardous chemical could be involved in a potential release shall be considered a single process*. [29 CFR 1910.119(b) (emphasis added).]

Petitioner does not explain how this provision aids its position here, where all of the "vessels" involved in the process appear to be owned and maintained by petitioner. In addition, the language of 29 CFR 1910.119(b) does not itself touch on whether more than one employer can be responsible for the PSM Standards for the same process. Further, we do not find petitioner's argument persuasive in light of *Perez* as discussed earlier.

Petitioner also argues that it cannot be held responsible for any violation of 29 CFR 1910.119(d)(3)(*i*)(B) (Citation 2, Item 2) because it "would need Woodworth to supply it with: (1) information 'pertaining to the hazards of the highly hazardous chemicals in the process';

(2) information 'concerning the technology of the process'; and (3) information 'pertaining to the equipment in the process,' all of which is required under 29 CFR 1910.119(d)(1)-(3)." Petitioner's arguments concern the requirements in 29 CFR 1910.119(d)(1) and (2). However, petitioner was not cited for violating either of these provisions. Instead, petitioner was cited for violating 29 CFR 1910.119(d)(3)(*i*)(B), which requires an employer to "complete a compilation of written process safety information before conducting any process hazard analysis required by the standard" and that this information shall "include information pertaining to the hazards of the highly hazardous chemicals used or produced by the process, information pertaining to the technology of the process, and information pertaining to the equipment in the process." 29 CFR 1910.119(d). Under 29 CFR 1910.119(d)(3)(*i*)(B), this relevant information shall include piping and instrument diagrams, or "P&IDs." Petitioner was cited for not including, "as part of the information pertaining to the equipment in the process, the piping and instrument diagrams . . . for the anhydrous ammonia storage system including the storage tanks, equipment, and instrumentation that were located outdoors at Woodworth Inc . . . ."

Petitioner does not dispute that it inspects and repairs the ammonia tanks and related equipment at the Woodworth facility. Petitioner argues that Woodworth, rather than petitioner, created and controls the ultimate industrial process and the hazards inherent in it. For example, petitioner maintains that the ammonia it owns "would not even be on site if Woodworth were not operational." Petitioner also argues that Woodworth "owns the ammonia it buys from [petitioner]" and determines what equipment to have and how the chemicals combine. While these statements may be true, they are irrelevant for purposes of this analysis. The citations related to the storage tanks and related equipment, which petitioner alone owned and installed. The contract between Woodworth, as buyer, and petitioner, as seller, stated that "[b]uyer shall have no ownership interest in the Equipment installed at the Site by the Seller . . . ." The contract also expressly prohibited Woodworth from altering, adjusting, or repairing any of petitioner's equipment. These facts establish that petitioner retained control over the equipment that created the specific hazard involved in the citations. Additionally, contrary to petitioner's claim that it lacked the ability to produce the information requested, as the entity in charge of this process, petitioner has this material readily at hand. In petitioner's brief on appeal, even petitioner acknowledges that Woodworth prepared P&IDs with information that petitioner provided to Woodworth. Therefore, we reject petitioner's assertion that it does not possess the requested information. We conclude that the ALJ did not err by finding that petitioner had a working knowledge of the hazards and the components associated with ammonia storage.

Petitioner also presents a number of interrelated arguments concerning other "errors" by the ALJ and the circuit court that it contends require reversal. Petitioner argues that the hearing officer erred by relying in part on the fact that it supplied the ammonia and that the tanks could fail " 'while being filled, serviced and/ or maintained.' " Petitioner asserts that 29 CFR 1910.119(h)(1) plainly excludes " 'delivery or other supply services' " from the requirements of the rule. However, petitioner fails to consider the cited language in context. Section 1910.119(h)(1) provides:

> This paragraph applies to contractors performing maintenance or repair, turnaround, major renovation, or specialty work on or adjacent to a covered process. It does not apply to contractors providing incidental services which do not influence

process safety, such as janitorial work, food and drink services, laundry, delivery or other supply services.

Petitioner's "maintenance and repair" of the valve and piping system cannot be characterized as "incidental services which do not influence process safety." It is instead a core part of Woodworth's production, and petitioner's "services" are directly related to process safety with respect to the delivery of the ammonia.

Petitioner also argues that the ALJ and the circuit court erred by concluding that petitioner controlled the ammonia storage at the Woodworth facility. Petitioner asserts that only Woodworth controls tank pressure, the flow of ammonia vapor, and access to the site on which the tanks sit. However, the contract between petitioner and Woodworth explicitly required that petitioner have access to the site at all times. Moreover, although Woodworth may control what occurs within the walls of its facility, under the terms of the contract, petitioner controls the tanks and attendant equipment, and Woodworth is prohibited from altering, adjusting, or repairing that equipment. The contract also grants petitioner the authority to unilaterally determine that equipment is inadequate and to replace that equipment when it deems it necessary. Therefore, we conclude that petitioner has not demonstrated that either the ALJ or the circuit court clearly erred by finding that petitioner retained control over the storage of ammonia at the Woodworth facility.

Petitioner additionally argues that partitioning responsibility makes little practical sense. According to petitioner, this means that both it and Woodworth would have to maintain data, over which petitioner has no control. However, respondent is not the entity who divided up the responsibilities. Rather, this division directly stems from the contract. More importantly, petitioner does have control over the material related to the storage tanks and attendant equipment that it was cited for not providing.

In summary, petitioner has not shown that the circuit court erred by affirming the portion of the ALJ's decision holding that petitioner could be cited as an employer for violations of PSM Standards other than those in 29 CFR 1910.119(h), and that petitioner was an employer for purposes of applying 29 CFR 1910.119(d)(3)(i)(B) and 29 CFR 1910.119(o)(1) to this case.

## IV. COMPETENCY OF THE EVIDENCE

Next, petitioner argues that the agency decision is not supported by competent evidence because the ALJ relied on hearsay statements in the field narrative, the inspection report, and the citations themselves. As the circuit court observed, however, petitioner did not identify any alleged hearsay statements in its discussion of this issue in its appeal to the circuit court. For the first time on appeal, petitioner now specifies that the alleged hearsay consisted of Woodworth's employees' statements in the field narrative and respondent's inspection report. Petitioner also asserts that citations are like a complaint and do not constitute evidence. Therefore, petitioner argues, the ALJ could not rely on the citations as a factual basis for his decision.

The Michigan Administrative Hearing Rules and the APA govern the conduct of administrative hearings. See Mich Admin Code, R 792.10101; MCL 408.1043. If an applicable rule does not exist, subject to statutory exceptions, the Michigan Court Rules and the APA apply. Mich Admin Code, R 792.10102(2) and (3).

-15-

Rule 792.10129 governs motions for summary disposition in administrative proceedings and provides, in pertinent part:

> (1) A party may make a motion for summary disposition of all or part of a proceeding. When an administrative law judge does not have final decision authority, he or she may issue a proposal for decision granting summary disposition on all or part of a proceeding if he or she determines that that any of the following exists:

> (a) There is no genuine issue of material fact. [Mich Admin Code, R 792.10129.]

The ALJ explained that petitioner's motion for summary disposition under Rule 792.10129 was "akin" to a motion brought under MCR 2.116(C)(10). Summary disposition is appropriate under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018) (cleaned up). "[A]ffidavits, depositions, admissions, or other documentary evidence may be submitted by a party to support or oppose the grounds asserted in the [MCR 2.116(C)(10)] motion." MCR 2.116(G)(2). In ruling on a motion for summary disposition under MCR 2.116(C)(10), the trial court may only consider substantively admissible evidence. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); MCR 2.116(G)(6). "However, although the evidence must be substantively admissible, it does not have to be in admissible form." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009).

With respect to evidence in administrative proceedings, Rule 792.10125 provides:

> (1) The Michigan rules of evidence, as applied in a civil case in circuit court shall be followed in all proceedings as far as practicable, but an administrative law judge may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs.

> (2) Irrelevant, immaterial, or unduly repetitious evidence may be excluded.

> (3) Effect shall be given to the rules of privilege recognized by law.

> (4) Objections to offers of evidence may be made and shall be noted in the record.

> (5) For the purpose of expediting a hearing, and when the interests of the parties will not be substantially prejudiced, the administrative law judge may

-16-

require submission of all or part of the evidence in written form. [Mich Admin Code, R 792.10125.]

Further, MCL 24.275 provides:

> In a contested case the rules of evidence as applied in a nonjury civil case in circuit court shall be followed *as far as practicable, but an agency may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.* Irrelevant, immaterial or unduly repetitious evidence may be excluded. Effect shall be given to the rules of privilege recognized by law. Objections to offers of evidence may be made and shall be noted in the record. Subject to these requirements, an agency, for the purpose of expediting hearings and when the interests of the parties will not be substantially prejudiced thereby, may provide in a contested case or by rule for submission of all or part of the evidence in written form. [Emphasis added.]

First, the prior MIOSHA decisions on which petitioner relies for the proposition that an ALJ cannot rely on hearsay evidence at all does not support its position. Rather, they stand for the proposition that an ALJ cannot rely "solely" on hearsay evidence. See *Bil Mar Foods v Bureau of Safety & Regulation Gen Indus Safety Div*, MIOSHA Citation Appeal, Report of the Administrative Law Judge, issued April 13, 2006 (Docket No. 2002-654), p 25. Petitioner does not argue that all of the items on which the ALJ relied were inadmissible hearsay. Petitioner also fails to discuss MCL 24.275 or explain how, in the instant case, the ALJ was not allowed to "give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." See MCL 24.275. With respect to the statements in the field narrative and inspection report, petitioner fails to explain why these documents and their contents constitute inadmissible hearsay. Although petitioner generally maintains that the employee statements were hearsay, petitioner fails to identify any specific statements or articulate how exceptions to the hearsay rule do or do not apply. In addition, petitioner fails to discuss whether the admission of any "hearsay" evidence was harmless, or what facts could not have been proven without this evidence. Under these circumstances, we would be justified in treating petitioner's hearsay argument as abandoned. A party abandons an issue by failing to address the merits of his or her assertions. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228, (2008). See also *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). Nonetheless, petitioner's arguments do not appear to have any merit.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible unless it falls within a listed exception. MRE 802. A statement that is not offered to prove the truth of the matter asserted is not hearsay. *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723, 733 (2008). There appears to be several exceptions that could apply in this case. For example, MRE 803(6), which applies to records of regularly conducted activity, provides:

A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Respondent maintains that the field narrative was the product of an allegedly routine inspection, which petitioner does not dispute. Further, the employee statements in the field narrative could also be exempted from the definition of hearsay as statements by a party opponent. Specifically, MRE 801(d)(2) provides that a statement is not hearsay if it is

offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, . . . or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) *a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship*, . . . . [Emphasis added.]

Additionally, MRE 701 permits lay witnesses to offer opinion testimony based on their perceptions. Therefore, had respondent been obliged to do so, it could have established the proper foundation to present the contents of the field narrative and investigation report through the testimony of the respective authors.

Although the trial court may only consider substantively admissible evidence, a party does "not have to lay the foundation for the admission" for evidence submitted in support of or in opposition to a motion for summary disposition under MCR 2.116(C)(10) "as long as there [is] a plausible basis for the admission" of the evidence. *Barnard Mfg Co, Inc*, 285 Mich App at 373. Applying those same principles to the instant case, petitioner has not established that the ALJ relied upon inadmissible hearsay evidence or that the trial court erred by affirming the ALJ's decision on the basis of the documentary evidence submitted in support of or in opposition to petitioner's motion for summary disposition under Rule 792.10129. Additionally, it is worth noting that petitioner's responsibilities relative to the storage equipment at issue were a matter of contract and petitioner's objections to the issuance of the citations were primarily based on its interpretation of 29 CFR 1910.119. Issues involving the interpretation of contracts and administrative regulations both involve questions of law. See *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019) ("The interpretation of a contract is a question of law reviewed de novo on appeal." (cleaned up)); *In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App at 698 (concluding that the interpretation of administrative regulations is a question of law reviewed de novo). As such, petitioner's challenges were primarily legal, rather than factual. With respect to petitioner's argument that the ALJ improperly "relied" on the citations themselves, petitioner again presents

no further explanation of this claim. Given petitioner's lack of argument, it has not demonstrated any entitlement to relief with respect to this issue.

In summary, petitioner's claim that the ALJ erred by relying on alleged hearsay evidence is not supported by its cited authority. Petitioner has also not adequately demonstrated that the challenged statements were not substantively admissible and either actually qualify as hearsay, or, if they do, would not be subject to the hearsay exception in MRE 803(6). Accordingly, petitioner has not shown that the ALJ failed to apply correct legal principles or misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings.

## V. DUE PROCESS

Petitioner argues that when the ALJ denied their motion for summary disposition, the action should have proceeded to a full hearing on the merits and that its right to due process was violated when a hearing was not held. We disagree.

In support of its position, petitioner relies on Mich Admin Code, R 792.10129(3), which provides, "[i]f the motion for summary disposition is denied, or if the decision on the motion does not dispose of the entire action, then the action shall proceed to hearing."

Petitioner asserts that the ALJ sua sponte affirmed Citation 1, Item 1 and Citation 2, Item 2. Although the ALJ's opinion states that it denied petitioner's motion for summary disposition in part, it also essentially determined that respondent was entitled to judgment in its favor with respect to Citation 1, Item I, and Citation 2, Item 2, and "affirmed" the $2,800 penalty. Further, respondent specifically requested that the case be dismissed under MCR 2.116(I)(2) if petitioner's motion for summary disposition was denied.

Nothing in the Rule 792.10129 specifically prohibits an ALJ who denies a party's motion for summary disposition from rendering judgment in favor of an opposing party when it appears that the opposing party is entitled to judgment in its favor. Instead, the rule appears to identify the next step in the process when a motion is denied and the court does not otherwise dispose of the action. Further, MCR 2.116(I)(2) provides that when deciding a motion for summary disposition, "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." We agree with the trial court. It would be an absurd result to adopt petitioner's position that when a motion for summary disposition is denied, the action must always proceed to a full hearing, even if the ALJ determines that the opposing party is entitled to judgment. Therefore, we conclude that the trial court did not misapply legal principles in determining that "cross-relief [was] consistent with summary disposition practice" under MCR 2.116(I)(2) in this case.

Petitioner cites *Al-Maliki v LaGrant*, 286 Mich App 483; 781 NW2d 853 (2009), in support of its due-process argument. The plaintiff in *Al-Maliki* was injured when her vehicle was struck from behind by the defendant's vehicle. *Id*. at 484. The defendant sought summary disposition on the grounds that the plaintiff had not shown that she sustained a serious impairment of a body function. *Id*. At the motion hearing, the circuit court sua sponte raised the issue of causation and granted summary disposition to the defendant on that ground. *Id*. This Court found that this violated the plaintiff's right to due process, explaining:

We are mindful of the fact that the trial court has the authority to grant summary disposition sua sponte under MCR 2.116(I)(1). However, the trial court may not do so in contravention of a party's due process rights. When the trial court decided to bring up the issue of causation at the motion hearing, the trial court then had the responsibility to provide plaintiff the opportunity to be heard on the issue. [*Id*. at 489 (cleaned up).]

Unlike in *Al-Maliki*, the ALJ in this case did not raise an alternative ground and then grant summary disposition on that basis. Rather, the ALJ granted summary disposition on the issue before it, i.e., whether petitioner qualified as an employer responsible for complying with the PSM Standards.

Petitioner also cites *Lamkin v Hamburg Twp Bd of Trustees*, 318 Mich App 546; 899 NW2d 408 (2017). In that case, the plaintiff filed a complaint against the defendant for failing to pursue a zoning violation action against one of the plaintiff's neighbors. *Id*. at 548. The circuit court dismissed the complaint sua sponte before it was even served. *Id*. at 549. The court cited MCR 2.116(C)(5) (lack of legal capacity) and MCR 2.116(I)(1). *Id*. This Court held that the plaintiff's due-process rights were violated. *Id*. at 550-551. The Court explained that "the circuit court's failure to notify [the plaintiff] that it was contemplating summary disposition of her claims constitutes a fatal procedural flaw necessitating reversal." *Id*. This case is distinguishable from *Lamkin*. In the instant case, petitioner had notice that summary disposition in favor of respondent was before the ALJ because respondent requested it.

Also, although petitioner asserts that it has defenses that it did not have an opportunity to present and argue, petitioner only identifies one possible defense that it says it could have raised. Specifically, petitioner asserts that it "intends to show at the hearing that it is infeasible for it to comply with 29 CFR 1910.119(o)(1) and 29 CFR 1910.119(d)(3)(i)(B)." However, that defense is based on petitioner's arguments concerning its alleged lack of responsibilities relative to the storage equipment at issue. As explained earlier those arguments are refuted by the express terms of the contract between petitioner and Woodworth.

For these reasons, we hold that petitioner has not shown a due-process violation or that it is entitled to relief.

Affirmed.

/s/ Michelle M. Rick
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens